**Affirmed and Opinion Filed May 19, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01613-CV

**MIKOB PROPERTIES, INC., ALLAN KLEIN, AND MITCHELL KOBERNICK,**
**Appellants**
**V.**
**DAVID JOACHIM AND INTERNATIONAL REALTY CONCEPTS, INC.,**
**Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-01602**

## OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

This breach of contract case arises out of a settlement agreement negotiated by business people who were represented by counsel. Appellants assert five issues that present three areas of dispute: (i) whether the trial court erroneously dismissed appellants' claim that the appellees breached a settlement agreement by pursuing a lawsuit not mentioned in the settlement agreement; (ii) whether the trial court erroneously directed a verdict against appellants' claim that they were fraudulently induced into the settlement agreement because there was no evidence that appellants reasonably relied on the appellees' statements about the settlement agreement's content and effect; and (iii) whether the trial court erred in awarding appellees their attorney's fees under appellants' declaratory judgment claim.

Because we conclude that (1) the trial court properly interpreted and applied the settlement agreement's plain language; (2) appellants' reliance on the alleged misrepresentations as a matter of law was not justified; and (3) the trial court could reasonably decide that appellees should recover their attorneys' fees incurred in defending against appellants' declaratory judgment claim, we affirm the trial court's judgment.

## I. Background

**The Parties.**

The appellants are: (1) Mikob Properties, Inc.; (2) Alan Klein, individually; and (3) Mitchell Kobernick, individually. The settlement agreement at issue defined Mikob, Klein, Kobernick, and another entity not involved in this appeal as the "K&K Group." We refer to Mikob, Klein, and Kobernick as "K&K."

The appellees are: (1) David Joachim; and (2) International Realty Concepts, Inc. The settlement agreement at issue defined Joachim and IRC as the "IRC Group," and we use that reference too.

**The Partnerships.**

Joachim is IRC's president. Joachim and IRC brokered a number of real estate transactions for K&K dating back to the 1980's.

In 1999, Kobernick, Klein, Joachim, and others formed Hilcom Partners, Ltd. ("Hilcom"). Kobernick and Klein owned their interest through a trust (the "Trust"). Hilcom's purpose was to acquire vacant land and build a hotel.

Hilcom acquired land that was divided into three parcels. Hilcom retained the hotel parcel and placed the other two parcels into two separate limited partnerships, "Left Field, Ltd." and "Right Field, Ltd." In 2005, the Left Field and Right Field parcels were sold to third parties. The sales proceeds were loaned to Hilcom.

Although the hotel was completed in 2001, Hilcom could not obtain permanent financing. The construction lender, however, agreed to carry the note if the loan was paid down to $650,000. The Trust loaned Hilcom the money for this payment.

In 2006, a permanent lender agreed to pay off the construction lender and carry the permanent loan if the Hilcom partner loans were converted to Hilcom partner equity. A new partnership, Hilcom Mezz Texas, Ltd. ("HM"), was formed to achieve that structure and its sole purpose was to be a Hilcom limited partner.

Hilcom Mezz GP, L.L.C. was HM's sole general partner. Kobernick, Klein, and William Karrington were the LLC's managers.

HM's limited partners included, among others, the Trust, Karrington, and Joachim. HM's partnership agreement included a schedule reflecting the conversion of partnership debt to equity and prioritizing partner distributions. The parties called these scheduled distributions as the "Waterfall."

**The Brokerage Litigation.**

In 2005, K&K converted a few apartment complexes into nonprofit housing projects. Several parties sued K&K and others claiming that they were entitled to commissions from these transactions (the "Brokerage Litigation").

IRC intervened in the Brokerage Litigation claiming that it acted as broker in the purchase of eight condominium complexes involved in the transactions and was entitled to a percentage of the purchase price. IRC asserted that it had not been paid for its services nor paid out of cash flows pursuant to a promissory note between IRC and Oak Creek Management, Inc.

(the "Oak Creek Note").[1] K&K received a take-nothing judgment against the original plaintiffs, and IRC's claims were severed from the case.

**The Libel Litigation.**

In 2007, while K&K were attempting to refinance one of the apartment properties, Joachim sent a letter to the title company handling the refinancing. K&K characterized Joachim's letter as threatening the title company with criminal prosecution if the loan closed. On January 7, 2008, K&K sued Joachim in Houston asserting business disparagement, defamation, tortious interference, and civil conspiracy claims (the "Libel Litigation").

**The Hilcom Suit.**

In February 2009, Hilcom considered selling the partnership assets. Kobernick prepared a spreadsheet analyzing potential sales proceeds and included historical payments and distributions.

Joachim became concerned about some of the payments reflected on the spreadsheet. As a result, he and Karrington requested access to HM's books and records. When they received an unsatisfactory response, on July 31, 2009 Joachim and the other Hilcom limited partners sued Kobernick and Klein in Houston (the "Hilcom Suit"). That court issued a temporary restraining order ("TRO") that prevented the defendants from misusing partnership funds among other things.

K&K's counsel was served with the suit on K&K's behalf on August 12, 2009. On September 2, 2009, K&K answered the Hilcom Suit. Although that answer included several affirmative defenses, it did not plead "release." From September 10, 2009 through May 24, 2011, the Hilcom Suit parties exchanged written discovery, continued to extend the TRO by agreement, retained experts, and filed summary judgment motions.

---

[1] The Oak Creek Note was signed by Kobernick as president of Oak Creek Management, Inc.

The Hilcom Suit asserted negligent misrepresentation claims arising out of alleged misrepresentations concerning K&K's ability to manage the partnership, breach of contract for refusing to allow the inspection of books and records, and failure to provide proper accounting and notice concerning distributions. The lawsuit also asserted breach of fiduciary duty and alter ego claims, and requested injunctive relief, actual and exemplary damages, and a constructive trust and accounting.

**The Settlement Agreement.**

The Brokerage Litigation was set for trial in the fall of 2009. In August 2009, Kobernick, Klein, and Joachim began settlement negotiations regarding that case. On August 12, 2009, the parties signed a Rule 11 settlement agreement regarding the Brokerage Litigation and the Libel Litigation. The parties, who were represented by counsel, later memorialized their agreement in a settlement agreement executed on August 27, 2009, two weeks after K&K's counsel was served with the IRC Group's Hilcom Suit petition.

The settlement agreement is between the K&K Group and the IRC Group. That is, all parties to this appeal are also parties to the settlement agreement and its mutual releases. The "Brokerage Litigation" and the "Libel Litigation" are also defined terms in the settlement agreement.

The settlement agreement's recitals state that "the Parties wish to terminate the Brokerage Litigation and the Libel Litigation . . . and enter into this Settlement Agreement for the mutual release and settlement of all disputes and claims that they have or may have had against one another in connection with the Brokerage Litigation and the Libel Litigation and the Cumidad Transaction Note, without any admission of liability."[2]

---

[2] This note is not involved in this case.

Section B of the settlement agreement, entitled "Dismissals With Prejudice of the Brokerage Litigation and the Libel Litigation" provides that the settlement agreement is a compromise and settlement of the Brokerage Litigation and the Libel Litigation. The parties agreed to mutual releases and to dismiss with prejudice "all claims against all remaining defendants in the Brokerage Litigation and the Libel Litigation."

Stated consideration for the settlement agreement included a $20,480 cash payment and $235,000 note to IRC. The parties also agreed on how historical distributions from HM would be treated, including a $784,000 distribution from 2006.

Finally, paragraph 18 of the settlement agreement provides that "the Settlement Agreement and the Settlement Documents reference [sic] herein contain the entire agreement between the parties."

The parties did not mention the Hilcom Suit in the settlement agreement.

**The Current Lawsuit.**

The Hilcom Suit continued for almost two years after the settlement agreement was signed. On May 24, 2011, however, K&K's counsel told IRC that IRC's continuing the Hilcom Suit breached the settlement agreement. After a thirty-day cure period, K&K filed the current lawsuit against Joachim and IRC.[3] K&K asserted declaratory judgment, breach of the settlement agreement, fraud, statutory fraud, fraud in the inducement, and negligent misrepresentation claims. K&K requested rescission of the settlement agreement, or alternatively, damages and attorney's fees. The IRC Group counterclaimed for declaratory relief, breach of contract, and attorney's fees.

---

[3] K&K also sued Clark Simmons and the H.S. Joachim Family Limited Partnership, Ltd. but subsequently nonsuited their claims against these defendants, who are not part of this appeal.

Both sides moved for summary judgment, which the trial court carried to trial. On the first day of trial, before the jury was empaneled, the court made a preliminary ruling on K&K's breach of contract claim and held that the settlement agreement did not include the Hilcom Suit. A jury was then empaneled, and K&K's fraud claims were presented to the jury. After K&K rested, the trial court granted the IRC Group a directed verdict on all of K&K claims. Specifically, the court held that: (i) the settlement agreement's release unambiguously did not release the Hilcom Suit; (ii) the IRC Group did not otherwise breach the settlement agreement by pursuing the Hilcom Suit; (iii) the IRC Group did not breach the settlement agreement and the settlement agreement is not void; (iv) there was no evidence of justifiable reliance to support a fraud claim; (v) the IRC Group was the prevailing party and a $15,000 attorney's fees award to it under the declaratory judgment statute would be equitable and just. The judge signed a final judgment and made findings of fact and conclusions of law.

## II. Issues On Appeal And Standard Of Review

K&K's first and second issues assert that (1) the trial court erred as a matter of law when interpreting the settlement agreement and (2) there was legally sufficient evidence to submit the breach of contract issue to the jury. We review the interpretation of a contract de novo following the applicable rules of construction. *U.S. Bank, Nat'l Ass'n v. Am. Realty Trust, Inc*., 275 S.W.3d 647, 650 (Tex. App.—Dallas 2009, pet. ref'd). If the relevant contract construction rules give the contract a definite legal meaning, we construe it as a matter of law. *See Frost Nat'l Bank v. L & F Distribs., Ltd*., 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). For the reasons discussed below, we conclude that the trial court correctly interpreted the contract and do not reach the legal sufficiency issue concerning contract breaches.

K&K's third issue challenges the directed verdict on their fraud claims. A court may direct a verdict if no evidence of probative force raises a fact issue on the material questions in

the suit. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). We review a trial court's decision to grant or deny a motion for a directed verdict and a motion for JNOV under the legal sufficiency standard of review. *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). When reviewing a directed verdict, we consider all the evidence in a light most favorable to the nonmovant, and we resolve all reasonable inferences that arise from the evidence admitted at the trial in the nonmonvant's favor. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

K&K's fourth and fifth issues challenge the award of attorney's fees under the declaratory judgment act. Specifically, K&K argue that the trial court erroneously held that the settlement agreement was not breached and in determining that the IRC Group was the prevailing party for purposes of a fee award. We review an award of attorney's fees under the act by determining whether the trial court abused its discretion by awarding fees because (i) there was insufficient evidence that the fees were reasonable and necessary, or (ii) the award of fees was inequitable or unjust. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Whether the fees are reasonable and necessary are fact questions, and whether they are equitable and just are questions of law. *Id.* A trial court abuses its discretion if it awards attorney's fees when there is no evidence to support the award. *Id.*

### III. Analysis

**A. Did the Trial Court Correctly Interpret the Settlement Agreement?**

The essence of K&K's contract breach argument is that the settlement agreement either directly released or otherwise resolved the claims in the Hilcom Suit and the IRC Group breached the settlement agreement by refusing to dismiss that suit. We begin by examining

whether the trial court correctly held that the release paragraph does not cover the Hilcom Suit claims.

### Release of the Claims

In construing a contract, a court must ascertain and give effect to the parties' intent as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 333 (Tex. 2011). We examine and consider the entire writing in an effort to harmonize and give effect to all of its terms so that none will be rendered meaningless. *Id.* We begin our analysis with the contract's express language. *Id.* We analyze the contract terms "with reference to the whole agreement," *Frost Nat'l Bank* 165 S.W.3d at 312, and no single provision is given controlling effect. *Hackberry Creek Country Club v. Hackberry Creek Homeowners Assn.*, 205 S.W.3d 45, 56 (Tex. App.—Dallas 2006, pet. denied). We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

Unless the court finds a contract ambiguous, a contract's meaning and intent is determined from the four corners of the document without the aid of extrinsic evidence. *Chapman v. Hootman*, 999 S.W.2d 118, 123 (Tex. App.—Houston [14th Dist.] 1999, no pet.). A contract is ambiguous when it is reasonably susceptible to more than one meaning. *See Italian Cowboy Partners,* 341 S.W.3d at 333. Lack of clarity or disagreement over interpretation of contract language, however, does not make a contract ambiguous. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003).

### The IRC Group's Interpretation

The applicable settlement agreement release paragraph states that the IRC Group releases K&K:

> . . . from any and all **claims**, disputes, demands, damages, debts, obligations, liabilities, suits, covenants, contracts, controversies,

agreements, promises or **causes of action** of any kind whatsoever, whether known or unknown, whether brought in the Brokerage Litigation and the Libel Litigation or not, compensatory or punitive, developed or undeveloped, which any of the IRC Group has, claims to have, or may have or claim to have in the future by reason of any and all claims or counterclaims **asserted in the Brokerage Litigation and the Libel Litigation or arising from the events and transactions that are the subject of the Brokerage Litigation and the Libel Litigation or are related in any way to the Brokerage Litigation and the Libel Litigation**; provided, however, anything herein to the contrary notwithstanding, the release set forth in this Section F.11. specifically excludes the any of K&K Group's obligations under the Settlement Documents.

(Emphasis added).

The IRC Group contends, the trial court held, and for the reasons discussed below, we agree that the release paragraph unambiguously did not release the IRC Group's claims against K&K in the Hilcom Suit because the release applies to only the Brokerage and Libel Litigations.

### *K&K's Interpretation*

K&K, on the other hand, posit that the settlement agreement's release language divides into two halves for interpretative purposes. Specifically, K&K contend that "there is no limitation in the scope of the Release as to any of the listed items. Only the last item (causes of action) is modified to refer to everything related to the Brokerage and Libel Lawsuits." According to K&K, the Hilcom Suit is within the release's scope because it was a "suit" involving "claims, disputes, demands and damages." In other words, K&K maintain that the IRC Group released its Hilcom Suit "claims" but that the "Brokerage Litigation" and the "Libel Litigation" limitations apply only to causes of action asserted in those two cases—and that those limitations do not apply to "claims."

K&K rely on the "last antecedent rule" to support their argument. Under that canon of contract and statutory construction, "relative and qualifying words, phrases, and clauses are to be applied to words and phrases immediately preceding, and are not to be construed as extending to

–10–

or including others more remote." *Montanye v. Transamerica Ins. Co.*, 638 S.W.2d 518, 521 (Tex. App.—Houston [1st Dist.] 1982, no writ). Further, "modifiers are intended to refer to the words closest to them in [a] sentence." *Samano v. Sun Oil. Co*., 621 S.W.2d 580, 581–82 (Tex. 1981). Assuming, without deciding, that the last antecedent doctrine applies here, it is neither controlling nor inflexible. *See Spradlin v. Jim Walter Homes, Inc*., 34 S.W.3d 578, 580 (Tex. 2000). It can be overcome by indicia of other meaning. *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).

K&K's interpretation of the release paragraph is not reasonable because there is clear indicia of other meaning. Specifically, the release paragraph does not isolate the phrase "causes of action" as K&K suggest. Instead, "causes of action" is included among several synonyms that include "claims, disputes, demands, damages, debts, obligations, liabilities, suits, covenants, contracts, controversies, agreements, promises or causes of action of any kind whatsoever." This phrase, in its entirety, is then qualified by three express references to the Brokerage Litigation and the Libel Litigation: (i) "by reason of any and all claims or counterclaims asserted in the Brokerage Litigation and the Libel Litigation," (ii) "or arising from the events and transactions that are the subject of the Brokerage Litigation and the Libel Litigation," and (iii) "or are related in any way to the Brokerage Litigation or the Libel Litigation." There is no indication that the parties intended to apply the term "causes of action" to another lawsuit that is not expressly mentioned.

Moreover, the settlement agreement in its entirety evinces the parties' intent that the release applies to only the Brokerage and Libel Litigations. For example, the recitals define the

–11–

Libel and Brokerage Litigations and state that "the parties wish to terminate the Brokerage Litigation and Libel Litigation," without mentioning the Hilcom Suit.[4]

Next, the settlement agreement's first numbered paragraph specifies those lawsuits that are within the agreement's scope. This paragraph states that it "is a compromise and settlement of all disputes, defaults, claims, counterclaims or potential claims that the parties have or may have had . . . in connection with the Brokerage Litigation and the Libel Litigation." Again, there is no reference to the Hilcom Suit.

And, in paragraph 2, the parties agree to dismiss the Brokerage and Libel Litigations without mentioning the Hilcom Suit or the IRC Group's claims in that lawsuit.

Yet there is no reference to the Hilcom Suit anywhere in the settlement agreement despite the fact that K&K were served with the Hilcom Suit before the settlement agreement was signed, and it is undisputed that they were aware of its existence at that time. Had the parties intended to include the Hilcom Suit in the release, that intent could have been stated in the settlement agreement's express language.

Accordingly, the only reasonable construction of the release's scope that gives effect to all of the settlement agreement's terms is that the release includes only those lawsuits that are referenced—the Brokerage Litigation and the Libel Litigation and does not release the claims in the Hilcom Suit.

Having concluded that the release paragraph unambiguously does not release the Hilcom Suit claims, we next consider whether the IRC Group's continued pursuit of the Hilcom Suit otherwise breached the settlement agreement.

---

[4] The recitals portion of a contract is a preliminary statement explaining the reasons for entering the contract, or the background of the transaction. *See Furmante Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.). Recitals do not control over operative phrases unless there is an ambiguity. *Id.* While we do not read the recitals as controlling, they are part of our consideration of the agreement in its entirety. *See Ameripath, Inc. v. Herbert,* 447 S.W.3d 319, 331 (Tex. App.—Dallas 2014, pet. filed); *All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009, no pet.) (recitals may be looked to in determining proper construction of the contract and the parties' intent).

## *K&K's Remaining Contract Arguments*

K&K argue that there was nonetheless still legally sufficient evidence that the IRC Group's continued pursuit of the Hilcom Suit breached other parts of the settlement agreement. Stated differently, according to K&K, "[r]egardless of the Court's determination on the scope of the Release language, the Parties agreed on how to resolve the Hilcom issues involved in the Hilcom Lawsuit, within the four corners of the Settlement Agreement." As supporting this argument, K&K identify five paragraphs in the settlement agreement that purportedly otherwise resolve the Hilcom Suit issues. These paragraphs include paragraph 3 (K&K assign ownership and membership interests in the Right and Left Field partnerships to Joachim), paragraph 4 (K&K resign their membership in Right and Left Field), paragraph 5 (where K&K disclaim any interest in a note payable from Hilcom to the Trust), paragraph 6 (acknowledging validity of $784,000 in distributions under the Waterfall), and paragraph 7 (acknowledging conversion of outstanding amounts owed to Left and Right Field to preferred equity to be paid under the terms of the Waterfall). As discussed below, however, K&K did not preserve this argument in the trial court because it was not pled or raised in the summary judgment papers.

K&K's live pleading at the time of trial does not address those paragraphs. That petition instead asserts that "[the IRC Group] did not perform under the settlement agreement" by refusing to drop the Hilcom Suit. In so pleading, K&K relied exclusively on settlement agreement paragraph 11 (the release paragraph). K&K also relied only on settlement agreement paragraph 11 in its summary judgment motion and in response to the IRC Group's summary judgment motion.[5] K&K now attempt to transform paragraphs 3-7's effect into a breach of contract argument raised for the first time on appeal.

---

[5] K&K's reference to settlement agreement paragraph 4 in their response reads as a predicate to their fraud claim.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is forfeited. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). Additionally, the complaint on appeal must be the same as that presented in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). An appellate court cannot reverse based on a complaint not raised in the trial court. *Id*. Thus, to the extent K&K now rely on paragraphs 3-7 as an independent ground for their breach of contract claim, the argument was not preserved for our review.[6]

Because the settlement agreement does not impose an obligation to dismiss or release the Hilcom Suit, the IRC Group did not breach the contract by continuing to pursue that suit. *See Mays v. Pearce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). K&K's first and second issues are overruled.[7]

**B. Was there Legally Sufficient Evidence to Support the Fraud Claim's Reliance Element?**

K&K argue that Joachim made three fraudulent comments: (i) the settlement agreement's release language included the Hilcom Suit; (ii) the settlement agreement resolved all differences between the parties; and (iii) Joachim would persuade the Hilcom Suit plaintiffs to dismiss their claims.[8]

The elements of a fraud claim are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or

---

[6] K&K also contend that the $855,480 consideration they paid under the settlement agreement is far less than the $377,750 given by Joachim and thus Joachim must have given some additional consideration—an agreement to dismiss the Hilcom Suit as consideration. This premise appears to apply to the argument that paragraphs 3-7 have the effect of resolving the Hilcom Suit, which K&K have not preserved.

[7] In addition, because there was no breach, the trial court properly declined to find that the settlement agreement was null and void and of no further effect.

[8] Although K&K pled common law fraud, statutory fraud, and negligent misrepresentation in this case, they raise only the fraud claim on appeal. We limit our inquiry accordingly.

made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).[9]

Fraud requires a showing of actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). In evaluating justification, the court considers whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id*. One may not justifiably rely on a representation when there are "red flags" indicating such reliance is unwarranted. *See id*. "Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context." *AKB Hendrick, LP v. Musgrave Enters., Inc*., 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.) (citing *Coastal Bank SSB v. Chase Bank of Tex., N.A*., 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

Here, these businesspeople were represented by counsel in an adversarial setting. The parties were actively involved in multiple lawsuits. The settlement agreement was, as the trial court found, negotiated at arms-length. As the trial judge also found, these sophisticated businesspeople had extensive experience in commercial real estate and related financing transactions. Moreover, the settlement agreement includes the parties' representations and warranties that they have read and understand the terms of the agreement. In ruling on the motion for directed verdict, the trial judge observed that:

---

[9] The IRC Group maintains that Joachim's alleged misrepresentations are not actionable fraud as a matter of law. But we need not consider whether that is so because even if the misrepresentations were actionable, the trial court properly held that K&K's reliance on the alleged misrepresentations was not justified.

> There is absolutely no reason for their lawyer to trust his lawyer. There is absolutely no reason for them to trust him under those circumstances because according to you, he's been sandbagging them all along and here they are . . . they've got everything settled and he files another lawsuit. And they said, oh, well, you know, we trust you. We know you'll make it go away. Huh-uh. That's not reasonable or justifiable reliance.

We agree with the trial court's conclusion. A party to an arm's length transaction must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. *See AKB Hendrick,* 380 S.W.3d at 232. A failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. *Id.* (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). K&K were obligated to take steps to protect their own interests and there is no evidence that they did so. Under these circumstances, K&K were not justified in relying on Joachim's alleged misrepresentations.

In addition, two of the alleged misrepresentations concern the settlement agreement's content—whether the settlement agreement resolved all differences between the parties and included the Hilcom Suit. We previously concluded that the unambiguous language in the settlement agreement does not release the Hilcom Suit. To the extent K&K relied on oral promises that are contrary to the unambiguous terms of the parties' written agreement, their reliance was unjustified as a matter of law. *See National Prop. Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 424-25 (Tex. 2015); *DRC Parts & Access., L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Therefore, the trial court did not err in granting a directed verdict on K&K's fraud claim. K&K's third issue is resolved against them.

**C. Was it Error to Award Attorney's Fees to the IRC Group Under K&K's Declaratory Judgment Claim?**

The IRC Group requested $75,000 in attorney's fees, but the trial court found that it would not be equitable and just to award that full amount. Instead, the court found that $15,000 was an equitable and just amount because the IRC Group should have filed its summary judgment motion sooner. K&K's fourth and fifth issues challenge this award.

Citing *MBM Financial Corp. v. Woodlands Op. Co.*, 292 S.W.3d 600, 609 (Tex. 2009), K&K assert that the IRC Group "was not entitled to attorney's fees as a prevailing defendant on K&K's breach of contract claim," and that the IRC Group "was not entitled to use the [Declaratory Judgments Act] as a vehicle to obtain otherwise impermissible attorney's fees." K&K's reliance on *MBM Financial* is misplaced here.

In *MBM Financial*, the plaintiff sued for breach of contract, fraud, and declaratory judgment. At trial, the plaintiff recovered no damages on its breach of contract and fraud claims. Although the plaintiff obtained five declarations, these declarations merely duplicated the issues in the fraud and contract claims. *Id*. at 671. As a result, the Supreme Court concluded that the *plaintiff* could not recover fees under the declaratory judgment statute. *Id*. at 670. In so doing, the Court held that:

> When a claim for declaratory relief is merely tacked on to a standard suit for a matured breach of contract, allowing fees under [the declaratory judgment statute] would frustrate the limits Chapter 38 imposes on such fee recoveries. And granting fees under [the declaratory judgment statute] when they are not permitted under the specific common-law or statutory claims involved would violate the rule that specific provisions prevail over general ones.

*Id*.

*MBM Financial*, however, does not prohibit the trial court from awarding IRC Group its attorney's fees based on K&K's declaratory judgment suit. *See LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 641 (Tex. App.—Dallas 2012, pet. denied). The declaratory judgment

statute allows "fee awards to either party in all cases." *MGM Financial*, 292 S.W.3d at 669. Because K&K pled for declaratory relief and the IRC Group pled for recovery of its attorney's fees for either prosecuting or defending a claim for declaratory relief, the trial court was authorized to award the IRC Group its attorney's fees under the UDJA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015).

The declaratory judgment act authorizes a trial court to award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The trial court expressly found that the IRC Group was the prevailing party and a $15,000 fee award was equitable and just. Nothing in the record contradicts this finding. We thus conclude the trial court did not err in awarding the IRC Group attorney's fees under the declaratory judgment act. K&K's fourth and fifth issues are overruled.

### III. Conclusion

Having resolved all of K&K's issues against them, we affirm the trial court's judgment.

131613F.P05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

–18–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MIKOB PROPERTIES, INC., ALLAN KLEIN, AND MITCHELL KOBERNICK, Appellants

No. 05-13-01613-CV V.

DAVID JOACHIM, INTERNATIONAL REALTY CONCEPTS, INC., Appellees

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-01602.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees DAVID JOACHIM AND INTERNATIONAL REALTY CONCEPTS, INC. recover their costs of this appeal from appellants MIKOB PROPERTIES, INC., ALLAN KLEIN, AND MITCHELL KOBERNICK.

Judgment entered May 19, 2015.