**Reversed and Remanded and Opinion Filed June 23, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00395-CV

## CHRISTIN BISHOP, Appellant
## V.
## CREDITPLEX AUTO SALES L.L.C. D/B/A GREENVILLE MITSUBISHI
## AND LARRY JACKSON, Appellees

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-13-01838-D**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Whitehill

This case addresses the effect of an "as is" statement in a consumer used car sale when there is evidence that (i) the consumer was relatively unsophisticated, the as-is clause was boilerplate, and the clause did not clearly apply to the kind of defect the car suffered from, and (ii) the auto dealer made a misrepresentation about the consumer's ability to trade the car in after a year. In two issues, appellant argues that the trial court erred by relying on the as-is clause to grant appellees a directed verdict on (i) appellant's failure-to-disclose DTPA claim, and (ii) appellant's unconscionable-conduct DTPA claim.

Appellant Christin Bishop bought a used car from appellee Creditplex Auto Sales L.L.C. d/b/a Greenville Mitsubishi. She later sued Creditplex and its general manager and part owner,

appellee Larry Jackson, for DTPA violations, specifically failure to disclose information under business and commerce code § 17.46(b)(24) and unconscionable conduct under § 17.50(a)(3). She alleged that appellees failed to disclose that the car had previously been in a wreck. Her claims were tried to a jury, but the trial court granted appellees a directed verdict based on an "as is" clause displayed on the car's window and incorporated into the sale contract.

We conclude that the as-is clause did not conclusively defeat Bishop's claims. Accordingly, the directed verdict was erroneous, and we reverse and remand.

## I. BACKGROUND

### A.  Facts.

We draw these facts from the trial evidence. Because the case was resolved on a directed verdict against Bishop, we consider the evidence in the light most favorable to her, drawing all reasonable inferences in her favor. *See Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App.—Dallas 2015, pet. denied).

In October 2011, Creditplex bought a 2010 Kia Forte from Manheim, Inc. at an auction. In that transaction, which Jackson handled for Creditplex, Manheim disclosed that the car had "frame/unibody damage."[1] Including fees, Creditplex paid a total of $9,210 for the car.

In February 2012, Bishop was looking for a car. She needed a car because the car she owned at the time was having mechanical problems. She had seen Creditplex during her work commute, so she went car shopping there. Salesperson Tammy Gabbert helped her. Bishop thought the Forte was cute and took it for a test drive. Gabbert told Bishop that the Forte would be a good car and that it would be "good on gas." Gabbert also told Bishop that she could try to

---

[1] Bishop's expert Fredric Kyler explained that a "frame" and a "unibody" are not the same thing. Several decades ago, cars were built onto a solid, heavy frame. But for the last few decades, every car on the road has been built with a unibody, meaning that each part is simply welded to the next part without an underlying solid frame. Jackson acknowledged that Kyler "did a fairly good job" of explaining the differences between a frame and a unibody. Kyler and Jackson both said that this car had a unibody.

trade the car in for something bigger "after paying on it for about a year or so."  No one told Bishop that the car had frame or unibody damage.

Bishop thought about it for a couple of days and then went back and bought the car.  She bought the car as co-buyer with her mother, Cynthia Bishop.  The sale price was $15,800.  Bishop financed her purchase with a 72-month loan at 17.95% interest.  She also bought a service contract for $1,500.  Bishop did not have the car inspected or obtain a Carfax report about the car before buying it.

There was a sticker on the window of the car that included the following material:

Bishop's mother signed the "buyers guide," but Bishop did not.  The sales contract that Bishop signed, however, incorporated the buyers guide by reference and provided that the buyers guide "overrides any contrary provisions in the contract of sale."

Bishop started looking for a different car less than a year later, in about December 2012 or January 2013. She liked the Forte and thought it ran well, but she needed a bigger car to accommodate her children. She took the Forte to a dealership, but that dealership would not take the car because it had frame damage. She would not have bought the car had she known it had "frame/unibody damage."

## B. Procedural History.

Bishop's live pleading at the time of trial contained several different causes of action against appellees, but before the trial started she nonsuited all of her claims except two DTPA claims. One was a claim that appellees had violated § 17.46(b)(24) by failing to disclose known information about the car to her, and the other was that appellees had violated § 17.50(a)(3) by committing an unconscionable action or course of action.

The case was tried to a jury. When Bishop rested her case, appellees moved for directed verdict arguing solely that the as-is clause negated causation as a matter of law. The trial court granted that motion and signed a take-nothing judgment against Bishop. Bishop appealed.

## II. ANALYSIS

## A. Issues and Standard of Review.

In two issues, Bishop asserts the trial court erred by granting a directed verdict on her § 17.46(b)(24) and § 17.50(a)(3) claims.

We review a directed verdict under the legal sufficiency standard of review. *Mikob Props.*, 468 S.W.3d at 594. Under this standard, we must credit evidence favorable to the nonmovant if reasonable jurors could, and we must disregard contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the nonmovant, and we draw all reasonable inferences from the evidence in the nonmovant's favor. *Mikob Props.*, 468 S.W.3d at 594.

A directed verdict against a plaintiff is proper if (i) the evidence fails to raise a fact issue on a matter essential to the plaintiff's right of recovery, or (ii) if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

**B.      As-is Clauses and *Prudential***

This appeal centers on the law governing as-is clauses, particularly the leading case of *Prudential Insurance Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156 (Tex. 1995). *Prudential* held that a contractual as-is clause can conclusively negate the element of causation and thus defeat claims such as DTPA violations, fraud, and negligence. *Id*. at 161.  In that case, Jefferson's predecessor in interest bought an Austin office building from Prudential. *Id*. at 159. The sale contract—which the buyer submitted—contained a lengthy as-is clause:

> As a material part of the consideration for this Agreement, Seller and Purchaser agree that Purchaser is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Seller that the Property is fit for a particular purpose.  Purchaser acknowledges that it is not relying upon any representation, statement or other assertion with respect to the Property condition, but is relying upon its examination of the Property.  Purchaser takes the Property under the express understanding there are no express or implied warranties (except for limited warranties of title set forth in the closing documents). Provisions of this Section 15 shall survive the Closing.

*Id*. at 160.  Three years after the sale, asbestos was found in the building, and the original buyer and Jefferson both sued Prudential for DTPA violations, fraud, negligence, and bad faith. *Id*. at 160.  The plaintiffs won a jury trial, and the court of appeals affirmed the resulting judgment. *Id*.

But the supreme court reversed and rendered a take-nothing judgment, holding that the as-is clause conclusively defeated the cause-in-fact element common to all the plaintiffs' claims. *Id*. at 160–64.  In so doing, the supreme court explained that

> [b]y agreeing to purchase something "as is", a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong. . . .
>
>      . . . .

A valid "as is" agreement, like the one in this case, prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is impossible for the buyer's injury on account of this disparity to have been caused by the seller. . . . The sole cause of a buyer's injury in such circumstances, by his own admission, is the buyer himself. He has agreed to take the full risk of determining the value of the purchase.

*Id*. at 161.

The *Prudential* court emphasized that the as-is clause was an important and negotiated part of the bargain between sophisticated parties:

Where the "as is" clause is an important part of the basis of the bargain, not an incidental or "boiler-plate" provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he is not relying on representations by the seller should be given effect.

*Id*. at 162.

On the other hand, the *Prudential* court also said that an as-is clause is not always outcome determinative:

First, it gave two examples of specific situations in which an as-is clause is not conclusive:

A buyer is not bound by an agreement to purchase something "as is" that he is induced to make because of a fraudulent representation or concealment of information by the seller. . . . Also, a buyer is not bound by an "as is" agreement if he is entitled to inspect the condition of what is being sold but is impaired by the seller's conduct.

*Id*.

The court then said that an as-is clause also can be unenforceable based on the "nature of the transaction and the totality of the circumstances surrounding the agreement":

We think it too obvious for argument that an "as is" agreement freely negotiated by similarly sophisticated parties as part of the bargain in an arm's-length transaction has a different effect than a provision in a standard form contract which cannot be negotiated and cannot serve as the basis of the parties' bargain.

*Id*.

Thus, an as-is clause may not be controlling if it appears in a standard form contract that cannot be negotiated nor serve as the basis of the parties' bargain, particularly if the parties are not equally sophisticated. *See id.*; *see also Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 727 (Tex. App.—Dallas 2006, no pet.) (summarizing circumstances under which an as-is clause is not determinative).

We applied *Prudential*'s totality-of-the-circumstances test to invalidate an as-is clause in *Kupchynsky v. Nardiello*, 230 S.W.3d 685 (Tex. App.—Dallas 2007, pet. denied). In that case, William Nardiello and Laree Caramella bought a house and later sued the builder and sellers for construction defects regarding the house's balconies. *Id.* at 686–87. The buyers won a jury trial on claims for DTPA violations, negligent misrepresentation, and breach of implied warranty. *Id.* at 687–88. The defendants appealed and argued that the buyers' claims were barred by an as-is clause in the sale contract. *Id.* at 689. We rejected the defendants' argument, distinguishing *Prudential* in several respects:

- The *Kupchynsky* as-is clause appeared in a standard, preprinted contract rather than in a contract negotiated for the particular transaction. *Id.* at 690.

- The *Kupchynsky* parties neither discussed nor negotiated the as-is clause. *Id.* at 691.

- There was evidence that post-inspection the *Kupchynsky* builder told the buyers that the balconies were designed to drain the way they did according to plans, but in fact there were no detailed drainage plans for the balconies, and the balconies varied from the only plans that existed. *Id.*

- There was evidence that the builder knew but did not disclose that the balconies incorporated materials that were prone to corrosion in this application. *Id.*

Even though we assumed that the parties' bargaining positions were equal, we held that the as-is clause did not conclusively negate causation: "Given the totality of the circumstances and the nature of the transaction, we conclude the as-is clause in this case did not negate causation as a matter of law." *Id.*

**C.** **Issue One: Does the as-is clause here conclusively negate causation regarding Bishop's § 17.46(b)(24) claim?**

**1.** **Applicable Law.**

To prevail on a § 17.46(b)(24) claim, a plaintiff must prove that (i) she is a consumer, (ii) the defendant knew information concerning goods or services, (iii) the defendant did not disclose the information, (iv) the defendant intended its nondisclosure to induce the consumer into a transaction the consumer would not have entered had the information been disclosed, (v) the consumer relied on the nondisclosure to her detriment, and (vi) the nondisclosure was a producing cause of economic or mental anguish damages. *See* TEX. BUS. & COM. CODE §§ 17.46(b)(24), 17.50(a)(1). Under the DTPA, a "producing cause" is a substantial factor that brings about the injury and without which the injury would not have occurred. *Holliday v. Weaver*, 410 S.W.3d 439, 443 (Tex. App.—Dallas 2013, pet. denied).

**2.** **Application of the Law to the Facts.**

**a.** **Totality of the Circumstances.**

We conclude that the evidence raised a genuine fact issue regarding whether the as-is clause was enforceable based on the totality of the circumstances surrounding this transaction.

First, the parties did not occupy equal bargaining positions. Creditplex was experienced in the used car business. Jackson had been the car business since 1985. Bishop, by contrast, had never worked in the automotive industry. She had bought a used car before, but she had never financed one before. When she bought the Forte, she did not negotiate the price; she just told Gabbert what kind of payments she needed, and Gabbert told her which vehicles she could afford. Although the trial court remarked during the directed verdict hearing that Bishop was "not unsophisticated," we conclude that she was unsophisticated compared to Creditplex. *Cf. Prudential Ins. Co.*, 896 S.W.2d at 159 (enforcing clause where buyer was "a knowledgeable real estate investor who owned an interest in at least thirty commercial buildings").

–8–

Second, the as-is clause's terms and context were not as clear as the clause in *Prudential*. In *Prudential*, the as-is clause specifically said that the buyer was taking the property as is "with any and all latent and patent defects," and the clause also contained a disclaimer of reliance. 896 S.W.2d at 160. In this case, however, the window sticker listed two options after the phrase "WARRANTIES FOR THIS VEHICLE:". The two options were "AS IS – NO WARRANTY" and "WARRANTY." The first option, which was checked, was followed by a two-sentence explanation: "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." Given the as-is clause's context, the average reader could reasonably construe it to relate only to repairs.

But Bishop's claims are not based an alleged failure by Creditplex to honor a repair obligation; they rest on its failure to disclose the car's true condition—a condition that Creditplex knew about and did not disclose, and that Bishop's expert testified lowered the car's value and could not be undone by repairs. Thus, this clause's language does not clearly apply to the defect about which Bishop complains. This weighs against enforcing the clause. *See Kupchynsky*, 230 S.W.3d at 690 (noting that as-is clause was less specific than *Prudential* clause); *see also Pairett v. Gutierrez*, 969 S.W.2d 512, 517 (Tex. App.—Austin 1998, pet. denied) (refusing to enforce clause that was silent regarding reliance).

Third, there is no indication that the as-is clause was "an important part of the basis of bargain" rather than an incidental or "boiler-plate"[2] provision. *Prudential Ins. Co.*, 896 S.W.2d at 162. According to Creditplex's finance manager, the as-is sticker is required by law and appears on every used vehicle that is sold. Bishop did not mention the window sticker as one of

---

[2] "Boilerplate" means (i) "[r]eady-made or all-purpose language that will fit in a variety of documents" or (ii) "[f]ixed or standardized contractual language that the proposing party often views as relatively nonnegotiable." *Boilerplate*, BLACK'S LAW DICTIONARY (10th ed. 2014).

the documents she discussed with Gabbert during the transaction.  Bishop's mother signed the window sticker, but Bishop did not.

The San Antonio Court of Appeals has referred to this kind of as-is clause as a "pre-printed, boiler plate sticker."  *Padgett's Used Cars & Lsng., Inc. v. Preston*, No. 04-04-00579-CV, 2005 WL 2290249, at *2 (Tex. App.—San Antonio Sept. 21, 2005, no pet.) (mem. op.).  We agree.  The boilerplate nature of this form as-is clause weighs against its enforceability.

The single *Prudential* factor that might otherwise favor of enforcement is the fact that this was an arm's-length transaction in the sense that the parties were previously strangers.[3]  *See* 896 S.W.2d at 162.  Otherwise, however, there was evidence from which a jury could have reasonably found that a sophisticated car dealership in the business of selling used cares took advantage of a relatively unsophisticated car buyer regarding an undisclosed, non-obvious defect that materially diminished the car's value when the dealer knew that the buyer would want to trade the car in after one-years' time.

Given the totality of the circumstances and the nature of this transaction, we conclude that the as-is clause did not conclusively negate causation in this case.  *See Kupchynsky*, 230 S.W.3d at 690–91 (refusing to enforce as-is clause, even assuming parties were of equal bargaining position, because other circumstances weighed against enforcement).

### b.      Fraudulent Representations or Concealment.

We also conclude that the as-is clause did not conclusively negate causation because the evidence raised a fact issue regarding whether Creditplex's fraudulent representation or information concealment induced Bishop to buy the car.  *See Prudential Ins. Co.*, 896 S.W.2d at

---

[3] "Generally, an arm's-length transaction is one between two unrelated parties with generally equal bargaining power, each acting in its own interest."  *Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 832 (Tex. 2014).

162 (fraudulent representation or concealment of information as bases for not enforcing an as-is clause).

Other courts of appeals have construed this *Prudential* exception to mean that the buyer resisting the as-is clause must prove the elements of common law fraud regarding the condition of the property being sold in order to overcome the clause. *See, e.g.*, *San Antonio Props., L.P. v. PSRA Invs., Inc.*, 255 S.W.3d 255, 258 (Tex. App.—San Antonio 2008, pet. granted, judgment vacated by agr.); *Procter v. RMC Capital Corp.*, 47 S.W.3d 828, 834 (Tex. App.—Beaumont 2001, no pet.); *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 253 (Tex. App.—Waco 2001, pet. denied). We assume without deciding that these courts are correct.

"The elements of fraud are (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury." *Baleares Link Express, S.L. v. GE Engine Servs.–Dallas, LP*, 335 S.W.3d 833, 839 (Tex. App.—Dallas 2011, no pet.).

Bishop argues that she adduced evidence of a fraudulent misrepresentation when she testified that Gabbert told her the Forte was a good car and that she would be able to bring it back and trade it in on a different car after making payments for a year. We agree.

Bishop testified that when she attempted to trade the Forte in less than a year after buying it, the dealer rejected the car because it had "frame damage." The evidence thus raises a fact issue that Gabbert's representations about the car were false. And a reasonable jury could conclude that Gabbert's representations were material, meaning that a reasonable person would

–11–

attach importance to the representation and would be induced to act on it. *See Desta v. Anyaoha*, 371 S.W.3d 596, 599 (Tex. App.—Dallas 2012, no pet.).

Next, the evidence raises a fact issue regarding whether Creditplex knew the representations were false. Here, Jackson knew that the car had sustained unibody damage in a prior accident. And Bishop's expert testified that "if you're selling your vehicle in the driveway and it's had body damage and you're disclosing that to the buyer, nine out of ten people are going to turn around and walk away."

Furthermore, the context of Gabbert's statement—negotiations for selling the Forte to Bishop—creates a reasonable inference that Gabbert intended for Bishop to rely on Gabbert's representation.

Bishop's testimony as a whole creates a reasonable inference that she relied on Gabbert's representation and would not have bought the Forte but for Gabbert's statement that she could trade it in after making payments for a year.

And Bishop's expert's testimony that the car was worth less because of the undisclosed accident created a reasonable inference that Bishop was injured by Creditplex's fraudulent representation.

Because Bishop raised a genuine fact issue regarding the fraudulent representation exception to *Prudential*, we conclude that the as-is clause did not conclusively negate causation.

### 3.     Conclusion

For the foregoing reasons, we hold that the evidence did not conclusively negate producing cause as to Bishop's § 17.46(b)(24) claims. The trial court erred by granting appellees a directed verdict on those claims. Because Creditplex and Jackson both relied solely on the as-is clause as the basis for their directed verdict motion, our holding requires reversal of the judgment as to both appellees.

**D.      Issue Two:  Does the as-is clause conclusively negate causation regarding Bishop's § 17.50(a)(3) claim?**

Bishop's other claim was that appellees violated § 17.50(a)(3) by committing an unconscionable action or course of action that was a producing cause of damages to her.  *See* BUS. & COM. § 17.50(a)(3).  Bishop argues that appellees' unconscionable conduct was a broad scheme not only to take advantage of Bishop by failing to disclose the Forte's prior accident and damaged condition but also to defraud the financing company that enabled Bishop to buy the car and Creditplex to make a large profit on it.  We need not delve into the details of her unconscionability theory, however, because the directed verdict on that claim was based solely on the as-is clause's supposed negation of producing cause.

We have already held that the as-is clause did not conclusively negate producing cause regarding Bishop's § 17.46(b)(24) claim.  For the same reasons, we hold that the as-is clause did not conclusively negate producing cause regarding Bishop's § 17.50(a)(3) claim.  Accordingly, the trial court erred by granting appellees a directed verdict as to those claims.

### III. CONCLUSION

For the foregoing reasons, we decide in appellant's favor on both of her issues, and we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

150395F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTIN BISHOP, Appellant

No. 05-15-00395-CV      V.

CREDITPLEX AUTO SALES L.L.C.
D/B/A GREENVILLE MITSUBISHI AND
LARRY JACKSON, Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-13-01838-D.
Opinion delivered by Justice Whitehill.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellant Christin Bishop recover her costs of this appeal from appellees Creditplex Auto Sales L.L.C. d/b/a Greenville Mitsubishi and Larry Jackson.

Judgment entered June 23, 2016.