**Affirmed and Opinion Filed October 19, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00917-CV

**VISION CAPITAL REAL ESTATE, LLC, Appellant**
**V.**
**WURZAK HOTEL GROUP, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-04121**

## MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Schenck
Opinion by Justice Francis

Vision Capital Real Estate, LLC, appeals the trial court's order granting a directed verdict and rendering a take-nothing judgment on its claim against Wurzak Hotel Group for breach of a commission agreement. In one issue, appellant asserts the ruling was error. We affirm.

The relevant facts in this case are undisputed. In late 2011, Parkway Corporation approached Wurzak to co-develop and co-manage a hotel it planned to build in downtown Philadelphia. The goal was to be 50-50 partners in the project, which required about $13.9 million of equity. Parkway contributed the land, valued at about $11 million, on which to build the hotel. Wurzak committed to invest $4 million to $6 million for a 30% to 50% equity ownership in the project. The construction loan was scheduled to close in February 2012 so the "time horizon" was "hurried."

Wurzak raised only $2 million and hired Vision to help raise the remainder of the equity. Under the engagement agreement, Vision was to act nonexclusively as the "Company's advisor" and to assist Wurzak in "raising equity and establishing a relationship between the Company and Capital Providers" to facilitate the capitalization of existing and future opportunities. "Company" was defined as "Wurzak Hotel Group, its subsidiaries and/or affiliates." In return, the Company was obligated to pay Vision a placement fee "based upon the amount of all equity. . . that the Capital Provider is obligated to advance to the Company, regardless of when the funding of such equity . . . actually occurs." As relevant here, the placement fee was 5% of any equity placed "up to or below $5 million." The engagement period was six months and was automatically extended six months unless one party terminated the agreement.

Vision sent a proposal to some two dozen potential investors, including Glenmont Capital Management, explaining it was raising money so that Wurzak's affiliate, DoveHill, could be a 50/50 owner with Parkway. Glenmont met with Wurzak but ultimately rejected the deal because of concerns related to the timing and structure of the project. As the date neared for the construction loan closing, Vision was unable to locate any investors and Wurzak was not able to raise the full amount it had committed to the project. Nevertheless, Parkway agreed to move forward with Wurzak and its reduced capital contribution.

In February 2012, the construction loan closed, the project was fully funded, and the Limited Partnership Agreement was executed forming 1200 Arch Hotel Partners LP, owner of the hotel. Affiliates of Wurzak and Parkway served as general and limited partners. Specifically, the general partners, each owning a 0.001% interest, were (1) 1200 Arch Hotel GP LLC, a Parkway affiliate, and (2) DoveHill Manager 1200 Arch, L.L.C., a Wurzak affiliate. The limited partners were (1) 1200 Arch Street Associates, L.P. (Street Associates), a Parkway affiliate, owning 85.6% interest with an initial capital contribution of $11,889,974; and (2)

DoveHill Partners 1200 Arch, L.P., a Wurzak affiliate owning 14.398% interest with a $2 million capital contribution. The document identified a third limited partner which had no ownership interest.

Because Parkway had put in 85 percent of the capital, the LPA created "sort of this staggered relationship" between Parkway and Wurzak. The ownership of Hotel Partners was structured so that 100% of the control was proxied to or otherwise vested with the Parkway affiliate, as majority owner. But the LPA also gave Wurzak the ability to buy a portion of Parkway's equity, within a limited time frame, to allow Wurzak to own up to 50% equity interest in Hotel Partners. At the same time, Wurzak was subject to expulsion if it could not increase its contribution.

Vision continued to try to locate investors to increase Wurzak's equity position but was unsuccessful. At some point, Glenmont re-entered the picture and began negotiating with Parkway to purchase for itself a direct ownership interest in Hotel Partners. In October 2012, Wurzak terminated its contract with Vision. The following month, Glenmont sent a Letter of Intent to acquire from Parkway a 37% interest in Hotel Partners for a price of $5 million. The letter included an understanding that the Glenmont equity would serve to reduce Parkway's interest.

On February 21, 2013, Glenmont, Parkway, and Wurzak, on behalf of their respective related entities, executed an Assignment and Assumption of Limited Partnership Interest of 1200 Arch Hotel Partners LP. Under the terms of the document, Parkway's affiliate Street Associates assigned to the Glenmont entity a 35.992% interest in Hotel Partners, and the Glenmont entity paid Street Associates $5 million. On that same day, the parties executed an Amended and Restated Limited Partnership Agreement (ARPLA) reciting that the Glenmont entity purchased a partnership interest from Street Associates and the amended agreement was required as a

condition of the sale. The ARPLA reflected the new ownership and capital contribution credits. Specifically, it showed the following ownership allocations: Street Associates, 45.818%; DoveHill Partners, 18.176%; and Glenmont, 35.992%.[1] The closing statement likewise reflected that the Glenmont entity paid $5 million to Street Associates.

One month after the closing, Vision sent Wurzak a letter acknowledging the closing of the transaction with Glenmont and demanding its placement fee "due to our efforts in introducing you to . . . Glenmont Capital during the terms of our engagement." When Wurzak refused, Vision filed this lawsuit.

At trial, Vision took the position it earned the fee if any money went into the hotel project by someone Vision introduced to Wurzak. But Wurzak argued the equity had to be placed with Wurzak, its subsidiaries, and/or affiliates to increase its equity position in the project, and Glenmont ended up purchasing for itself the 36% of the project that Wurzak wanted to buy.

After Vision presented its evidence, Wurzak moved for directed verdict arguing it did not breach the commission agreement as a matter of law. Specifically, Wurzak argued that to be liable under the engagement agreement, a capital provider had to be obligated to advance equity to Wurzak or its affiliate, DoveHill. According to Wurzak, the only capital provider at issue, Glenmont, was not obligated and did not advance any debt or equity to Wurzak; thus, no placement fee was owing. Vision responded that the engagement agreement covered Wurzak, its subsidiaries and affiliates, and the issue therefore was "whether an affiliate received money in this transaction." Vision then argued Hotel Partners received the money and is an affiliate of Wurzak's. After considering the arguments, the trial court granted Wurzak's motion for directed verdict and rendered a take-nothing judgment. Vision filed this appeal.

---

[1] DoveHill paid $525,000 to increase its ownership interest. Neither side asserts this money resulted from Vision's efforts.

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.,* 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.). A directed verdict for a defendant may be proper in three situations: (1) when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (3) a legal principle precludes recovery. *Varel Int'l Indus., L.P. v. Petro Drillbits, Int'l, Inc.*, No. 05-14-01556-CV, 2016 WL 4535779, at *3–4 (Tex. App.—Dallas Aug. 30, 2016. no. pet. h.).

When reviewing a directed verdict, we apply a legal sufficiency or "no evidence" standard of review and consider all the evidence in a light most favorable to the nonmovant, and resolve all reasonable inferences that arise from the evidence admitted at the trial in the nonmovant's favor. *King's Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App.—Dallas 2015, pet. denied). If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 220–21 (Tex. 2011). To the extent the trial court's ruling on a directed verdict is based on a question of law, an appellate court reviews that aspect of the ruling de novo. *Varel Int'l*, 2016 WL 4535779, at 4.

In its sole issue on appeal, Vision argues the directed verdict was improper because Wurzak is affiliated with Hotel Partners, which it argues is the partnership that received Glenmont's $5 million capital investment. Vision argues Wurzak is an "affiliate" of Hotel Partners "by virtue of its affiliates serving as a general partner and a limited partner" of Hotel Partners as well as by "its direct involvement and agreement" with the Glenmont transaction.

Thus, Vision contends it was entitled to its fee under the language of the engagement agreement. Having reviewed the evidence, we disagree.

The engagement agreement provided that Vision was due a commission upon closing of any transaction with a capital provider it introduced to Wurzak, its subsidiaries and/or affiliates, and the commission was to be calculated based upon the amount of all equity the capital provider was obligated to advance to Wurzak, its subsidiaries and/or affiliates.

Although Vision introduced Wurzak to Glenmont, Glenmont rejected the deal to invest in the Wurzak affiliate, DoveHill, which would have increased Wurzak's equity position in Hotel Partners. Instead, some months later, Glenmont negotiated a deal to purchase for itself a direct ownership interest in Hotel Partners from Parkway. The relevant documents show Glenmont paid $5 million directly to Street Associates for a 36% interest in Hotel Partners, leaving Street Associates with an ownership interest of almost 46%.[2] Although the Hotel Partners amended partnership agreement reflects Glenmont was credited with a capital contribution of $5 million, Glenmont's purchase did not impact the total amount of capital contributions going to Hotel Partners. In other words, Hotel Partners did not receive a financial benefit from Glenmont's infusion of capital because the amount of capital contributions remained the same as under the original partnership agreement. What did change was the number of limited partners, the amount credited to each as the initial capital contribution, and the percentage interest of their ownership. Whether Wurzak was involved in the negotiations leading up to Glenmont's purchase does not change the conclusion that Vision did not place equity in Hotel Partners, even assuming it is a Wurzak affiliate.

Alternatively, Vision argues that if this Court concludes Street Associates was the only entity to receive Glenmont's $5 million investment, Street Associates is also an affiliate of

---

[2] In addition, Wurzak's affiliate, DoveHill, paid Street Associates an additional $525,000 and increased its interest to 18 percent.

Wurzak's. Using a definition of "affiliate" that means to "bring in close connection with," Vision asserts Wurzak was involved in the transaction, derived benefits from it, and agreed to the amended partnership agreement, all of which it says establishes Wurzak was undeniably in "close connection" with all the entities involved and is thus "'an affiliate' of Street Associates at least for purposes of this transaction."[3] Again, we cannot agree.

The contract does not define "affiliate," so we apply its plain, ordinary, and generally accepted meaning. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "Affiliate" is generally defined as a "corporation that is related to another corporation by shareholdings or other means of control" and as a "company effectively controlled by another or associated with others under common ownership or control." *Eckland Consultants, Inc. v. Ryder, Stillwell Inc.*, 176 S.W.3d 80, 88 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (internal citations omitted).

Vision presented no evidence that Wurzak had any control over Street Associates or that it was effectively controlled by another or associated with others under common ownership or control. To the contrary, Vision's witnesses testified Street Associates was an affiliate of Parkway and was controlled by Parkway. Having reviewed the record, we conclude the trial court did not err in granting a directed verdict on Vision's claim. We overrule the sole issue.

We affirm the trial court's order granting a directed verdict.


/Molly Francis/
_____
MOLLY FRANCIS
JUSTICE

150917F.P05

---

[3] Vision uses the "verb" definition for affiliate found in Webster's Ninth Collegiate Dictionary. The resource defines the noun "affiliate" as "an affiliated person or organization" and then defines "affiliated" as "closely associated with another *typically in a dependent or subordinate position*. . . ." *Affiliate, Affiliated,* WEBSTER'S NINTH NEW COLLLEGIATE DICTIONARY 61 (9th ed. 1985) (emphasis added).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

VISION CAPITAL REAL ESTATE, LLC,
Appellant

No. 05-15-00917-CV          V.

WURZAK HOTEL GROUP, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-04121.
Opinion delivered by Justice Francis;
Justices Stoddart and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's order granting a directed verdict is **AFFIRMED**.

It is **ORDERED** that appellee Wurzak Hotel Group recover its costs of this appeal from appellant Vision Capital Real Estate, LLC.

Judgment entered October 19, 2016.