# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0644

═══════════

MERCEDES-BENZ USA, LLC, JACK L. HOLT, CRAIG W. DEARING AND FRANK J. OSWALD, JR., PETITIONERS,

v.

CARDUCO, INC. D/B/A CARDENAS METROPLEX, RESPONDENT

═══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════

**Argued December 4, 2018**

JUSTICE DEVINE delivered the opinion of the Court.

In this case, Carduco, Inc., a Mercedes-Benz franchisee, obtained a multi-million dollar judgment against its franchisor, Mercedes, premised on a jury verdict that Mercedes fraudulently induced it to purchase the assets of the previous Mercedes-Benz dealer in Harlingen, Texas. Carduco alleges it agreed to take on the Mercedes-Benz franchise in Harlingen because Carduco believed it would eventually be able to relocate to the McAllen area as the exclusive Mercedes-Benz dealership there. Mercedes allegedly fostered that belief through misrepresentations and concealment while it actively negotiated with another dealer for the McAllen location. After Mercedes awarded the McAllen franchise to the other dealer, Carduco filed suit.

To prevail on a fraud claim, a plaintiff must prove that it actually and justifiably relied on a factual misrepresentation to its detriment. The issue here is whether Carduco's belief that Mercedes had promised the McAllen area to it was justified in light of the parties' written agreement. Because that agreement approved and identified only Harlingen as Carduco's dealership location, provided that Carduco could not move, relocate, or change any dealership facilities without Mercedes's prior written consent, provided that Carduco's right to sell cars in any specific geographic area was nonexclusive, and stated that the agreement was not intended to limit Mercedes's right to add new dealers in the area, we conclude that the parties' written agreement directly contradicts Carduco's alleged belief and thereby negates its justifiable reliance as a matter of law. The court of appeals' judgment affirming the award of actual and punitive damages is accordingly reversed and judgment rendered that Carduco take nothing.

I

From 1992 until 2009, Renato G. Cardenas (Rene) owned and operated the Autoplex Mercedes-Benz dealership in Harlingen, Texas. Mercedes-Benz USA, LLC ("MBUSA"), the entity responsible for the distribution, marketing, and customer service for all Mercedes-Benz products in the United States, became dissatisfied with Rene's dealership. It viewed the dealership's facilities to be outdated and its overall performance poor. MBUSA urged Rene to invest in a modern "Autohaus" dealership facility and showed him studies indicating that the optimal location for this facility would be near McAllen. Rene discussed relocating his dealership to McAllen with MBUSA and indicated in these discussions that he would use his father's construction company for the build.

Rene ultimately balked at signing an agreement setting a deadline for relocation and so an approved site or plan for the move was never agreed upon.

Rene's company subsequently pled guilty to felony charges of failing to report a transaction involving more then $10,000 in cash, and MBUSA saw that as an opportunity to terminate Rene's Dealer Agreement for cause. The termination proceeding was abandoned, however, after Rene entered into an asset purchase agreement with his father, Renato E. Cardenas. *See* TEX. OCC. CODE § 2301.359 (allowing a dealer to transfer its franchise to a qualified person). Renato agreed to buy the dealership assets from his son in exchange for a $7 million, 30-year, non-recourse note.

The elder Cardenas is a very successful businessman with decades of experience as a multi-line car dealer in the Rio Grande Valley. He also has other business interests in the Valley, including construction, real estate, and development. The asset purchase agreement was originally in the name of Cardenas Motors, Inc., but Renato later decided to make the acquisition in the name of another solely-owned company, Carduco, Inc. He conditioned his obligation to close on MBUSA's approval of Carduco's dealership application and the State's granting of a license for Carduco to operate the dealership in Harlingen.

On May 8, 2008, Carduco's lawyer submitted the Asset Purchase Agreement to MBUSA along with Carduco's initial application to become a Mercedes-Benz dealer. The cover letter advised MBUSA that Carduco would "operate the franchise at its current location in Harlingen." The agreement further stated that Carduco was "only purchasing the right to conduct a Mercedes-Benz retail sales dealership at Purchaser's present location in Harlingen, Cameron County, Texas." About this same time, MBUSA approached Heller-Bird, a successful MBUSA franchisee in Boerne,

3

Texas, about building a new Mercedes-Benz dealership in the McAllen area. MBUSA did not inform Carduco of these discussions.

In the fall of 2008, Renato Cardenas met with Craig Dearing and Frank Oswald, two MBUSA representatives. Both had previously provided support for his son, Rene, and other Mercedes-Benz dealerships in Texas. Dearing, an MBUSA after-sales development manager, and Oswald, a service and parts dealer representative, surveyed the conditions of the dealership in Harlingen and discussed the improvements that Carduco would need to make at the Harlingen dealership. During this meeting, Renato expressed his interest in moving the franchise to the McAllen area, where MBUSA had encouraged his son to relocate. Dearing and Oswald suggested that Carduco might therefore want to submit two plans, one for the Harlingen location and another for the alternative location if the dealer were allowed to move the dealership. Carduco never submitted an alternative plan for the dealership, and MBUSA continued its discussions with Heller-Bird. Renato remained unaware of these discussions and thus assumed that he would eventually be able to relocate the Harlingen dealership he was negotiating to acquire.

In May 2009, Oswald returned to the Harlingen dealership with Damon Blakemore, the local dealer representative for the Rio Grande Valley. While there, they met with both Rene and Renato. Renato could not stay for the entire meeting, but before departing he asked Oswald and Blakemore to accompany Rene to McAllen to look at two sites that might be suitable for a new Mercedes-Benz dealership. Oswald and Blakemore agreed to go with Rene. After seeing the two sites, Blakemore commented that they looked good to him but that any application to relocate would have to go through Jack Holt, the regional franchise manager in Chicago. At this point, Holt had not had any

4

contact with Renato Cardenas or anyone else at Carduco. But he did have an initial opinion about the pending sale. Holt considered Rene's proposed sale of assets to his father a sham to avoid the termination of Rene's dealer agreement. An internal MBUSA email indicated Holt's willingness to "work around" the transaction, which Carduco later interpreted to be the installation of a competing dealership in McAllen.

On June 24, 2009, Carduco signed a Dealer Agreement with MBUSA. The agreement identifies Harlingen as the dealership location and prohibits Carduco from changing locations without MBUSA's written consent. The agreement also identifies Carduco's Area of Influence, a geographic area that MBUSA assigns to the dealer for purposes of evaluating the dealer's performance. The agreement states that Carduco does not have an exclusive right to sell Mercedes-Benz Passenger products in its Area of Influence and specifically permits MBUSA to add new dealers or relocate dealers into Carduco's Area of Influence.

Two months later, Holt met with Carduco and other Texas Mercedes-Benz dealers to announce the appointment of Heller-Bird to a new dealership near McAllen. After learning of the appointment, Carduco formally requested permission to relocate to the same area. MBUSA denied the request. Carduco subsequently filed suit, alleging that MBUSA, Dearing, Oswald, and Holt fraudulently induced Carduco to believe that its bargain with MBUSA included the opportunity to relocate to McAllen as the exclusive Mercedes-Benz dealership in the region.

A jury found for Carduco, agreeing that the defendants fraudulently induced Carduco into the dealership acquisition. It awarded damages of $15.3 million measured by the benefit of Carduco's bargain to relocate the Harlingen dealership to McAllen and continue operations there

5

as the exclusive Mercedes-Benz franchisee. The jury also awarded punitive damages of $100 million against MBUSA, $10 million against Holt individually, and $2.5 million each against Dearing and Oswald individually. The trial court rendered judgment on these findings.

The court of appeals suggested a remittitur of the punitive damages award to $600,000, but otherwise affirmed the trial court's judgment. 562 S.W.3d 451, 475, 495-96, 500 (Tex. App.—Corpus Christi-Edinburg 2016) (mem. op.). One member of the three-judge panel dissented, arguing that Carduco should take nothing because "the alleged oral representations and non-disclosures about which Carduco complains are directly contradicted by the express, unambiguous terms of the Dealer Agreement, and Carduco was not justified in relying upon them as a matter of law." *Id.* at 496 (Rodriguez, J. dissenting).

Both parties have filed petitions for review in this Court. MBUSA complains about the court of appeals' decision to affirm the jury's finding of fraudulent inducement. Carduco complains about the court of appeals' remittitur of the jury's $115 million punitive damages award. We begin with MBUSA's petition and complaints.

II

The elements of a claim for fraudulent inducement are "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part

6

of its proof." *Id.* The contracts here are Carduco's Dealer Agreement with MBUSA and its agreement to purchase the assets of Rene Cardenas's Autoplex dealership.

Carduco asserts that it was fraudulently induced to sign those agreements by MBUSA's representations which, according to its pleadings, were "that Carduco could relocate to McAllen, Texas as the exclusive new Mercedes-Benz dealership in the region and that MBUSA was not planning to put another dealer in the McAllen Area." MBUSA responds that the Dealer Agreement's express terms conflict with these alleged misrepresentations and that Carduco therefore could not have justifiably relied on them as a matter of law.

The Dealer Agreement assigns a physical location for the dealership and an Area of Influence ("AOI"). The agreement identifies Harlingen as the location of Carduco's dealership, and it prohibits Carduco from changing that location without MBUSA's written consent. The agreement further describes the AOI as a geographic area, typically identified by a collection of zip codes, that MBUSA assigns to each dealer:

> MBUSA will assign to Dealer a geographic area consisting of a collection of zip codes or census tracts that is called an Area of Influence ("AOI"). MBUSA may alter or adjust Dealer's AOI at any time. The AOI is a tool used by MBUSA to evaluate Dealer's performance of its primary obligations hereunder. Dealer agrees that it has no right or interest in any AOI and that MBUSA may add new dealers to or relocate dealers into Dealer's AOI. Any such addition or relocation of a dealer will result in an alteration or adjustment of Dealer's AOI.

Carduco's AOI included McAllen and the rest of the Rio Grande Valley before MBUSA created a new distribution point in McAllen. After the appointment of the Heller-Bird dealership in McAllen, MBUSA adjusted Carduco's AOI by dividing the area between the two dealerships. Carduco has very little control over its AOI under the Dealer Agreement: it does not have an exclusive right to

7

sell Mercedes-Benz Passenger products in its AOI, and MBUSA reserves the right to adjust Carduco's AOI by adding new dealers into the area. Thus, MBUSA argues that its rights under the agreement directly conflict with Carduco's allegations of fraud.

To prevail on a fraud claim, a "plaintiff [must] show actual and justifiable reliance." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Whether a party's actual reliance is also justifiable is ordinarily a fact question, but the element may be negated as a matter of law when circumstances exist under which reliance cannot be justified. *See, e.g., Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) ("[A] party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms.").

MBUSA argues that Carduco could not read the written provision that "it has no right or interest in any AOI and that MBUSA may add new dealers to or relocate dealers into Dealer's AOI" and still plausibly believe that MBUSA had promised to hold McAllen open or that MBUSA would not add new dealers to Carduco's area. In this regard, MBUSA submits that Carduco's fraudulent-inducement claim is similar to another case recently decided by this Court. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648 (Tex. 2018).

In *Orca Assets*, a company formed by an experienced oil-and-gas businessman signed a lease for land that had already been leased to another. *Id*. at 650, 652. The company sued the lessor's agent, JPMorgan, for fraud and negligent misrepresentation, alleging that it had justifiably relied on JPMorgan's statements that the land was open. *Id*. at 654. JPMorgan argued that the company's claims were negated as a matter of law because the company could not have justifiably relied on

8

statements that the land was open considering the number of red flags present. *Id*. at 654-55. We agreed, concluding that a letter of intent, which placed the responsibility on the plaintiff to investigate title and contained a negation-of-warranty provision, directly contradicted the representations on which the plaintiff allegedly relied. *Id*. at 659. We concluded that this direct contradiction together with other red flags and the company's sophistication in the oil-and-gas industry negated the company's justifiable reliance on the alleged misrepresentation. *Id*. at 660.

Carduco argues that *Orcha Assets*'s analysis does not apply here because there were no "red flags" that prevented Carduco from justifiably relying on Mercedes's representations and failures to disclose. Carduco submits instead that it proved textbook fraud. Before Carduco acquired the Harlingen dealership for seven million dollars and became a franchised Mercedes-Benz dealer, MBUSA concealed an existing fact—that MBUSA had already contracted with a competing dealer for the McAllen location—a fact that if known would have caused Carduco to cancel its purchase.

MBUSA responds that Carduco's insistence that it would not have closed the Harlingen acquisition "but for" the alleged misrepresentation of MBUSA's plans reinforces that its alleged reliance was unjustifiable. If Carduco was induced into investing seven million dollars based on a belief that McAllen would be open and available whenever it sought to relocate, then its duty "to protect its own interests through the exercise of ordinary care and reasonable diligence rather than blindly relying upon another party's vague assurances," *Orca Assets*, 546 S.W.3d at 660, required it and its lawyers to edit the written contractual provisions stating that MBUSA could assign another dealer there and that Carduco had no right to any particular area. MBUSA argues further that Carduco's no-red-flags distinction here is equally unavailing because *Orca* does not require both

9

a direct contradiction in the written contract and additional other red flags to defeat a plaintiff's justifiable reliance as a matter of law.

We agree. Although *Orca Assets* discusses both direct contradiction and other red flags, it does not require them both to negate justifiable reliance. In fact, we noted just the opposite, stating that either could be sufficient to preclude justifiable reliance. *Id*. at 660 n.2. In truth, when a plaintiff asserts reliance on a misrepresentation that the written contract directly and unambiguously contradicts, both are present because the existence of such a conflict is itself a large red flag. *See id*. at 658 (stating that written contract's direct contradiction was "another alarm Orca disregarded").

In *Orca Assets*, we approvingly quoted from one of a number of court of appeals decisions[1] that have rejected similar fraudulent-inducement claims on the ground that a party cannot justifiably rely on a misrepresentation that directly conflicts with the terms of the signed contract. *Id*. (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858-59 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (en banc)). The contract in that case granted DRC non-exclusive distribution rights. *Id*. at 856. But DRC claimed that the defendant fraudulently induced it to sign the agreement by promising exclusive distribution rights. *Id*. at 858. The court of appeals rejected the claims because "reliance upon an oral representation that is directly

---

[1] *See, e.g., Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 599 (Tex. App.—Dallas 2015, pet. denied) ("To the extent [plaintiff] relied on oral promises that are contrary to the unambiguous terms of the parties' written agreement, their reliance was unjustified as a matter of law"); *see also Rinard v. Bank of Am.*, 349 S.W.3d 148, 152-53 (Tex. App.—El Paso 2011, no pet.); *Taft v. Sherman*, 301 S.W.3d 452, 457-58 (Tex. App.—Amarillo 2009, no pet.); *DeClaire v. G&B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 46-47 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 257-58 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied); *Spring Window Fashions Div., Inc. v. Blind Maker, Inc*., 184 S.W.3d 840, 871 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.).

contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Id.* To hold otherwise, the court reasoned, would be to reward a party for signing a contract under false pretenses, promising to abide by the written terms while secretly intending to enforce the conflicting terms of an unwritten bargain. *Id.* The court concluded:

> Because such an approach would defeat the ability of written contracts to provide certainty and avoid dispute, the prevailing rule, recited above, is instead that a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract.

*Id.* at 859. Because Carduco's claim of fraudulent inducement is directly contradicted by the contract's terms, we agree that there could be no justifiable reliance here as a matter of law.

III

Another issue for Carduco in this case is the testimony of Renato Cardenas, Carduco's sole owner and decision maker, who testified that none of the defendants actually made any oral representation to him about Carduco's ability to move the dealership to the McAllen area as the exclusive Mercedes-Benz dealership there. The court of appeals avoided this concession by concluding that "the fraud in this case was more than merely oral representations that directly contradicted the terms of the contract." 562 S.W.3d at 469. The court reasoned that "[i]f the jury determined that MBUSA signed the Dealer Agreement with the intent to cause Carduco harm, it could have found that MBUSA committed fraud on that basis alone." *Id.* at 471. As support, the court cites the Texas Occupations Code which imposes a statutory duty of good faith and fair dealing on the relationship formed under a car dealership franchise agreement. *Id.* (citing TEX. OCC.

11

CODE § 2301.478); *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002) (noting that the statutory duty is actionable in tort).

Carduco similarly relies on the Occupations Code to argue that the agreement between a motor vehicle manufacturer and a Texas dealer encompass both contractual and statutory rights. For example, Chapter 2301 prohibits a manufacturer from imposing a right of first refusal when an existing dealer wishes to transfer its franchise to a qualified transferee. TEX. OCC. CODE § 2301.359(i). Carduco further submits that, regardless of the contractual provisions, the Chapter provides other protections to dealers, such as:

> • prohibiting a manufacturer from modifying a franchise if the modification "would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide service to the public," unless the manufacturer provides notice and has good cause for the modification, *id*. § 2301.454(a), (d);
>
> • limiting a manufacturer's ability to deny or withhold written consent to a Texas dealer's decision to relocate absent reasonable grounds, *id*. § 2301.464(a); and
>
> • affording dealers a right to protest license applications for similar dealers in the same county or within a 15-mile radius of the protesting dealer, *id*. § 2301.652(b).

Carduco contends that these statutory protections, together with MBUSA's previous encouragement that Rene's Autoplex dealership should relocate from Harlingen, MBUSA's conduct during negotiations with Carduco that appeared to confirm that desire, and MBUSA's concealment of parallel negotiations with Heller-Bird for the McAllen dealership, reasonably led Carduco to believe that it could relocate to McAllen at some future date.

MBUSA responds that the Occupations Code's only significance here is to confirm MBUSA's right to install another Mercedes-Benz dealer in McAllen. MBUSA submits that section

2301.359 is irrelevant because it neither sought to enforce a right of first refusal nor rejected Carduco's application to become the dealer in Harlingen; section 2301.454 is irrelevant because MBUSA never modified or replaced Carduco's franchise, and even had it done so, Carduco failed to pursue its administrative remedy; and finally section 2301.652 is irrelevant because it provides existing dealers with a right to protest the installation of a new dealer only when the existing dealer is in the same county or within 15 miles of the new dealership. The Harlingen dealership is neither. MBUSA concedes that section 2301.464 applied to Carduco's belated request to relocate to McAllen. But MBUSA submits it provided timely notice rejecting Carduco's request, and again Carduco failed to pursue an administrative protest of its decision.

These arguments under the Occupations Code underscore the fundamental problem with Carduco's case. Carduco claims that it relied on MBUSA not to assign any other dealer to the McAllen area so Carduco could relocate there as the exclusive Mercedes-Benz dealership. But if this were true, then Carduco should have insisted on these terms in the parties' contract rather than agreeing in writing to the opposite.

Carduco nevertheless contends that MBUSA concealed from Carduco (and Autoplex) that it was placing another dealer in the AOI and affirmatively denied that it was doing so while actively encouraging Carduco's plans to relocate. Carduco asserts that the reason for this secrecy was to prevent it or Rene's Autoplex from protesting MBUSA's plan to install a new dealer in McAllen.

The court of appeals concluded that MBUSA had a duty to disclose its plans for McAllen during the negotiations because there is some evidence "that MBUSA misled Renato into believing that Carduco had approval to move to McAllen." 562 S.W.3d at 478. But because MBUSA and its

13

representatives (Oswald, Dearing and Holt) had no relationship with Carduco that could give rise to such a duty, the court of appeals' conclusion depends on evidence that MBUSA through its representatives made some partial disclosure that triggered a duty to say more.

The court of appeals reasoned "that a duty to disclose arose in at least one, if not all, of the following situations:"

> when one voluntarily discloses information, he has a duty to disclose the whole truth; when one makes a representation, he has a duty to disclose new information when the new information makes the earlier representation misleading or untrue; when one makes a partial disclosure and conveys a false impression, he has the duty to speak; and when one knows that the other is about to enter into a contract under a mistake as to undisclosed facts, he has a duty to disclose facts basic to the transaction if the other party would reasonably expect a disclosure of those facts because of the relationship between the parties, the customs of trade, or other objective circumstances.

*Id.* at 479 (citing *Playboy Enters. , Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 260 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied)).[2] The "situations" described by the court that give rise to a disclosure duty are similar to those provided in the Restatement (Second) of Torts section 551, although the court of appeals' opinion does not reference that as its source.

Carduco submits that a party can avoid these situations by choosing not to make a partial disclosure or representation in the first place but that MBUSA did not remain silent when questioned about a timely rumor. That rumor concerned new dealership incentives approved by the San Juan city council. San Juan, a community outside of McAllen, was the site that Heller-Bird chose, and

---

[2] In a footnote accompanying this text, the court described and characterized "the earlier representations [which] were that MBUSA intended to allow Carduco to become a Mercedes-Benz franchisee when in fact MBUSA sought to 'work around' the buy/sell and terminate the dealer agreement by allowing Heller-Bird to open in Carduco's AOI and hopefully destroy Carduco's business so that Renato would sell Carduco to Heller-Bird and Heller-Bird would then close Carduco, leaving only one Mercedes-Benz dealership in the Valley." *Id.* at 479 n.33.

MBUSA approved, for its dealership. When Robert Chappell, a sales manager for Rene's Autoplex dealership, heard about the rumored incentives, he called Oswald to inquire if MBUSA was involved. Oswald reportedly responded that he knew nothing about MBUSA plans for a new dealership in San Juan. Chappell discussed this conversation, and the rumor that spawned it, with his boss, Rene, who at the time still owned the Autoplex dealership. Evidence concerning the state of Oswald's knowledge about MBUSA plans for McAllen was conflicting, and thus the jury could have determined Oswald's disclaimer to be inaccurate and misleading. But even so, MBUSA argues there is no evidence that Renato heard about—let alone justifiably relied on—Chappell's conversation with Oswald because Rene testified that he never shared the rumor or Chappell's inquiry of Oswald with his father. MBUSA also compares this evidence to Renato's testimony that no one with MBUSA made partial or other disclosures to him about Carduco's ability to move the dealership to McAllen. Rather Renato was led to believe that MBUSA would approve his move to McAllen by the conduct of its representatives, particularly the actions of Oswald and Dearing, who accompanied his son to McAllen to look at sites Renato was considering for the dealership's relocation. Renato testified that because MBUSA was aware of his interest in moving the dealership from Harlingen to McAllen it should have told him about its plans with Heller-Bird before he closed on the deal with his son.

"As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). "Whether such a duty exists is a question of law." *Id*. "Generally, no duty of disclosure arises without

15

evidence of a confidential or fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

The relationship between a franchisor and a prospective franchisee is not a special or fiduciary one. MBUSA instead contends that discussions about a new automobile dealership are themselves confidential. *See, e.g.*, Tex. Occ. Code § 2301.2575 (stating that "a request for an application for a dealer's license is confidential"). Moreover, under the Dealer Agreement, MBUSA had the right to add the Heller-Bird dealership near McAllen without consulting its existing Mercedes-Benz dealers. MBUSA concludes that no authority exists to support disclosure obligations to a potential franchisee, like Carduco, that are more extensive than the duties owed to established franchisees.

MBUSA also contends that no basis exists for the application of the four situations identified in section 551 of the Restatement (Second) of Torts, a part of the Restatement that this Court has never expressly adopted. *See Bradford*, 48 S.W.3d at 755-56. MBUSA submits that no defendant made any affirmative disclosure or representation on the subject of relocating to McAllen that could have triggered a legal duty to disclose more. *See* 562 S.W.3d at 478 ("[a] duty to speak may arise in an arms-length transaction when: (1) one voluntarily discloses information . . .; (2) one makes a representation . . .; [or] (3) one makes a partial disclosure . . .").[3] Because Renato Cardenas,

---

[3] The court of appeals included a forth circumstance under which a fuller disclosure might be required: when "one knows that the other is about [to] enter into a contract under a mistake as to undisclosed facts, he has a duty to disclose facts basic to the transaction if the other party would reasonably expect a disclosure of those facts because of the relationship between the parties, the customs of trade, or other objective circumstances. 562 S.W.3d at 478. MBUSA argues that the parties' relationship, the customs of trade, and the objective circumstances negate, rather than support, the imposition of a disclosure here. Carduco argues that "[t]he defendants incurred a duty to disclose by choosing to disclose only a portion of the material information" and that it "relies on disclosures and affirmative misrepresentations, not mere silence, to support the duty to disclose."

16

Carduco's sole decision-maker, concedes that no defendant made any representations to him about Carduco's ability to move the dealership to the McAllen area as the exclusive Mercedes dealership there, we agree that, even were we to adopt the Restatement's view, there would be no evidence to support its application here. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995) (holding that section 551 did not apply because "SmithKline made no representations to Doe whatever").

IV

In *Orca Assets*, we said that "[i]n determining whether justifiable reliance is negated as a matter of law, courts 'must consider the nature of the [parties'] relationship and the contract.'" *Orca Assets*, 546 S.W.3d at 654 (quoting *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.). In an arm's length transaction, the party alleging fraud must have exercised ordinary care to protect its own interests and cannot blindly rely on the defendant's reputation, representations, or conduct where the plaintiff's knowledge, experience, and background warrant investigation. *Id*. "And when a party fails to exercise such diligence, it is 'charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated.'" *Id*. (quoting *AKB*, 380 S.W.3d at 232).

Carduco's sole owner, Renato Cardenas, is an experienced car dealer with decades of experience with several manufacturers. Although he had not previously done business with MBUSA, he understood the relationship between the manufacturer and its authorized dealers. He was led to believe that MBUSA would allow him to relocate to McAllen by certain statements and conduct that occurred before and during negotiations, but he concedes that MBUSA never promised

17

to hold that market open for him in so many words. In fact, the Dealer Agreement he signed expressly provided that MBUSA was under no such obligation. The court of appeals concluded it was enough that MBUSA did not disclose its negotiations with another dealer for the McAllen location and did nothing to disabuse Carduco of the notion that it would eventually be allowed to move there. But as in *Orca Assets*, the parties' relationship and sophistication required greater diligence than the execution of a written contract that directly contradicted Carduco's assumed bargain and assertion of fraudulent inducement. Because the conduct and actions of MBUSA on which Carduco relies to establish its fraudulent-inducement claim are directly contrary to the unambiguous terms of the contract it signed, we conclude that Carduco's reliance thereon was unjustified as a matter of law. The court of appeals therefore erred in affirming the trial court's judgment, as modified.

The court of appeals modified the trial court's judgment after Carduco agreed to the remittitur suggested by the appellate court. *See* 562 S.W.3d at 500 (supplemental mem. op.). Carduco's petition for review complains that this remittitur, which reduced the jury's $115 million punitive damages award to $600,000 was untethered to the requisite due-process guideposts and therefore arbitrary. Because no basis exists for the actual damages awarded in this case we need not consider this complaint.

\* \* \* \* \*

The judgment of the court of appeals is reversed and judgment is rendered that Carduco take nothing.

18

_____
John P. Devine
Justice

Opinion Delivered: February 22, 2019