

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00004-CV

**TEXAS CENTRAL BUSINESS LINES CORPORATION,**
                                                              **Appellant**

 **v.**

**U.S. POLYCO, INC.,**

                                                                **Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 92159

## MEMORANDUM OPINION

In six issues, appellant, Texas Central Business Lines Corporation ("TCB"),

challenges various rulings by the trial court in favor of appellee, U.S. Polyco, Inc.

("USP"). We reverse and remand.

### Background

TCB is a terminal and switching railroad that operates in Midlothian, Texas. TCB

also provides transloading operations, which is the transfer of commodities from rail cars

to trucks to reach their final destination. USP produces various blends of proprietary asphalt products that it sells to customers throughout the United States.

Seeking to use TCB's transloading operations to increase capacity to bring in larger quantities of asphalt by rail to service customers, USP entered into two agreements with TCB—a "Transload Agreement" ("TA") and a "Railroad Allowance Agreement" ("RAA"). These agreements addressed the construction of a plant for USP, as well as infrastructure to support USP's business expansion.

The agreements also provided that TCB would pay certain costs, that USP would pay other costs, and for reimbursement of costs from one party to the other under specific circumstances. In particular, the RAA requires USP to be responsible for paying up to $1.2 million as a maximum customer payment for infrastructure. The RAA also provides that: "All costs of construction of the TCB Infrastructure Improvements which cumulatively exceed the Maximum Customer Payment amount will be paid in a timely manner by TCB."

The construction process resulted in cost overruns. USP alleged that it paid more than $1.2 million toward the infrastructure improvements to get the project moving. At trial, USP asserted that it paid close to $9 million for the plant and infrastructure improvements combined.

The facility was substantially completed in February 2016. However, because there was no electricity at the plant, and because a parking lot was not completed, the fire

marshal would not issue a certificate of occupancy. Therefore, USP was unable to operate the plant.

This dispute centers on which party was responsible for the costs associated with concrete construction, utilities construction, and the construction of a parking lot. Claiming that the other party is responsible for paying these costs under the RAA and the TA, TCB and USP each assert that the other party breached the RAA and TA and relieved them of responsibility to perform under the RAA and the TA.

USP was the first to file suit in this matter, alleging breach-of-contract and/or anticipatory breach of contract claims against TCB. TCB filed an answer denying the allegations contained in USP's original petition and later filed a counterclaim against USP for breach of contract for failing to reimburse TCB for the costs associated with the construction of the utilities at the USP plant and for costs up to $1.2 million for the construction of TCB Infrastructure Improvements. USP filed an answer denying the claims made by TCB.

Thereafter, TCB filed traditional and no-evidence motions for summary judgment, arguing, among other things, that it is entitled to summary judgment on its counterclaims and that TCB did not breach or anticipatorily breach any contract it had with USP. USP responded by amending its original petition and filing a motion for partial summary judgment. In its amended petition, USP included more detail regarding its claims and damages, including an allegation that its actual damages are $12,699,989. In its motion

for partial summary judgment, USP contended, among other things, that it was limited to pay the maximum amount of $1.2 million towards infrastructure construction under the RAA and that sections 1.1, 2.1, and 2.2 of the RAA required TCB to pay the rest of the costs for the utilities as actual costs of construction for the TCB Infrastructure Improvements.

Subsequently, the parties filed responses and objections to the pending motions for summary judgment. On November 14, 2016, the trial court signed an order granting USP's motion for partial summary judgment only as to USP's contract interpretation of section 1.1(3) of the RAA and denying the remainder of the motion for partial summary judgment, as well as TCB's motions for summary judgment.[1] In the order, the trial court specifically concluded, as a matter of law, that:

Under § 1.1(3) of the Railroad Allowance Agreement entered into as of July 14, 2014 between USP and TCB, the phrase "as are agreed upon by TCB and Customer in writing" modifies only the phrase "other items in or adjacent

[1] Section 1.1 of the RAA provides the following:

**1.1 TCB Infrastructure Improvements.** As used in this Agreement, "TCB Infrastructure Improvements" will mean the following improvements agreed to and shown generally in Exhibit X attached and incorporated into this Agreement by this reference ("Preliminary Layout"): (1) approximately 3000 feet of rail track, including two rail transload tracks shown in the TCB Rail Transfer Area from which Commodities may be transferred to and from the Designated Area-Storage; (2) approximately 6000 feet of a two-lane improved (stabilized but unpaved) driveway suitable for trucks carrying Commodities between Midlothian Parkway and the Designated Area-Truck Transfer, shown in the Truck Transit Area; and (3) various concrete and ground surface improvements, including without limitation slabs for truck scales and racks, tank and appurtenant structures to house personnel, oil heating and steam generation equipment, curbs and planters for parking areas, and other items in or adjacent to the Designated Areas as are agreed upon by TCB and Customer in writing. All TCB Infrastructure Improvements constructed or provided for under this Agreement will be the sole property of TCB upon completion and are intended for the primary use of TCB in the conduct of its railroad operations.

to the Designated Areas" and does not modify the phrase "various concrete and ground surface improvements, including without limitation slabs for truck scales and racks, tank and appurtenant structures to house personnel, oil heating, and steam generation equipment, curbs and planters for parking areas.

In light of the trial court's ruling on its motion for partial summary judgment and a ruling allowing the testimony of USP's expert witness, USP amended their petition once again to increase the allegation of actual damages to $13,339,479. TCB amended their counterclaim to argue that USP breached the TA. TCB also amended its original answer to USP's suit.

The case was ultimately tried to a jury. In the jury charge, the trial court instructed the jury as to the trial court's interpretation of section 1.1(3) of the RAA, as stated in its order on USP's motion for partial summary judgment. The jury determined that TCB committed a material breach of the RAA and awarded USP $8,699,989 in damages. The jury also found that neither party breached the TA. The trial court denied several post-trial motions filed by TCB and signed a final judgment in favor of USP, awarding $8,699,989 in damages, $1,138,149.25 in pre-judgment interest, $347,000 in attorney's fees, and attorney's fees for appeals to this Court and the Texas Supreme Court. TCB then filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**Interpreting the RAA & the Partial Summary Judgment**

In its first issue, TCB contends that the trial court erred by interpreting section 1.1(3) of the parties' RAA to not require a written agreement of the parties regarding several things, including concrete and ground surface improvements. This issue is related to TCB's fifth and sixth issues, which challenge the trial court's granting of USP's motion for partial summary judgment based on the trial court's interpretation of section 1.1(3) of the RAA and the instruction given in the jury charge based on the trial court's interpretation of section 1.1(3) of the RAA.

TCB specifically argues that the trial court's interpretation of section 1.1(3) of the RAA is erroneous because it is patently unreasonable and contradicts the parties' intent, it renders the modifier "as agreed upon by TCB and Customer in writing" meaningless, and because the modifier applies to "various concrete and ground surface improvements" based on the series-qualifier and the last-antecedent canons of construction.

SUMMARY JUDGMENT

We review the trial court's traditional summary judgment de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The party moving for summary judgment bears the burden of proof. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). The moving party must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *W. Invs., Inc. v. Urena*, 162

S.W.3d 547, 550 (Tex. 2005). An issue is conclusively established "if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Urena*, 162 S.W.3d at 550.

CONTRACT INTERPRETATION

Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as expressed in the contract. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Contract terms are given their plain, ordinary, and generally-accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *Valence Operating Co.*, 164 S.W.3d at 662; *see Bhatia v. Woodlands N. Houston Heart Ctr.*, 396 S.W.3d 658, 669-70 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). We also construe contracts from a utilitarian standpoint bearing in mind the particular business activity to be served. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014).

"An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). A court may consider the parties' interpretation of the contract and admit extrinsic evidence to determine the true meaning of its terms only after the court

has determined that the contract is ambiguous. *Id.* at 450-51 (citation & quotation omitted). When the controversy can be resolved by proper construction of an unambiguous document, rendition of summary judgment is appropriate. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000). "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)); *see Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (stating that a contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation).

DISCUSSION

Section 1.1 of the RAA provides the following:

**1.1 TCB Infrastructure Improvements.** As used in this Agreement, "TCB Infrastructure Improvements" will mean the following improvements agreed to and shown generally in Exhibit X attached and incorporated into this Agreement by this reference ("Preliminary Layout"): (1) approximately 3000 feet of rail track, including two rail transload tracks shown in the TCB Rail Transfer Area from which Commodities may be transferred to and from the Designated Area-Storage; (2) approximately 6000 feet of a two-lane improved (stabilized but unpaved) driveway suitable for trucks carrying Commodities between Midlothian Parkway and the Designated Area-Truck Transfer, shown in the Truck Transit Area; and (3) various concrete and ground surface improvements, including without limitation slabs for truck scales and racks, tank and appurtenant structures to house personnel, oil heating and steam generation equipment, curbs and planters for parking areas, and other items in or adjacent to the Designated Areas as are agreed

upon by TCB and Customer in writing. All TCB Infrastructure Improvements constructed or provided for under this Agreement will be the sole property of TCB upon completion and are intended for the primary use of TCB in the conduct of its railroad operations.

Relying on series-qualifier and last-antecedent canons of construction, TCB contends that the phase "as are agreed upon by TCB and Customer in writing" applies to "various concrete and ground surface improvements, including without limitation slabs for truck scales and racks, tank and appurtenant structures to house personnel, oil heating and steam generation equipment, curbs and planters for parking areas, and other items in or adjacent to the Designated Areas," as stated in section 1.1(3) of the RAA. On the other hand, USP asserts that traditional canons of construction hold that modifiers, such as the phrase at issue, attach only to those words closest to them.

**Series-Qualifier Canon of Construction**

The series-qualifier canon of construction provides that "'[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.'" *Sullivan v. Abraham*, 488 S.W.3d 294, 297 (Tex. 2016) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012)). Section 1.1(3) of the RAA contains several nouns in a series followed by a postpositive modifier—the phrase at issue. Therefore, under series-qualifier canon and consistent with TCB's argument, the phrase "as are agreed upon by TCB and Customer in writing" would modify all items in

the series listed in section 1.1(3) of the RAA, including "various concrete and ground surface improvements." *See id.*

**Last-Antecedent Canon of Construction**

Under the last-antecedent canon of construction, "'relative and qualifying words, phrases, and clauses are to be applied to words and phrases immediately preceding, and are not to be construed as extending to or including others more remote.'" *Mikob Props. v. Joachim*, 468 S.W.3d 587, 595-96 (Tex. App.—Dallas 2015, pet. denied) (quoting *Montanye v. Transamerica Ins. Co.*, 638 S.W.2d 518, 521 (Tex. App.—Houston [1st Dist.] 1982, no writ)); *see Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) ("That canon of construction [the last-antecedent] states that a qualifying phrase in a statute or the Constitution must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied." (citing *City of Corsicana v. Willmann*, 147 Tex. 377, 216 S.W.2d 175, 176 (Tex. 1949))). "'[M]odifiers are intended to refer to the words closest to them in [a] sentence." *Mikob Props.*, 468 S.W.3d at 596 (citing *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 581-82 (Tex. 1981)); *see Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012) (stating that modifying phrases "should be applied only to the portion of the sentence immediately preceding it" (internal citation & quotation omitted)). Under this canon and consistent with USP's contention, the phrase "as are agreed upon by TCB and Customer in writing" would only modify the last item in the series, which is the phrase "other items in or adjacent to the Designated

Areas."  We do note, however, that the Texas Supreme Court has stated that the last-antecedent doctrine is "neither controlling nor inflexible."  *Willmann*, 216 S.W.2d at 176.

**Punctuation**

Either the series-qualifier or the last-antecedent canons might reasonably apply to this text, but they cannot both apply because they point in different directions.  *See Sullivan*, 488 S.W.3d at 297.  Thus, without more, neither aids in our understanding of the contract provision.  USP, however, also argues that the use of punctuation supports its reading of section 1.1(3) of the RAA.

"Punctuation is a permissible indicator of meaning."  *Id.* (citing *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454, 113 S. Ct. 2173, 2182, 124 L. Ed. 402 (1993); SCALIA & GARNER, *supra*, at 161).  As explained by the *Sullivan* Court,

> punctuation "will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part."  [SCALIA & GARNER, *supra*, at 161].  Thus, "[p]roperly placed commas [c]ould cancel the last antecedent canon" and vice versa.  Scalia and Garner offer the following example: "You will be punished if you throw a party, or engage in any other activity, that damages the house."  The comma after "activity" does substantial work:  It signals that the phase "that damages the house" modifies both "party" and "any other activity."  *Id.* at 162.  Absent the comma after "activity," the last-antecedent canon would be triggered and the phrase "that damages the house" would modify only "any other activity."  *Id.*

*Id.* at 297-98.

Applying this example to section 1.1(3) of the RAA, the insertion of a comma after "Designated Areas," but before the phrase "as are agreed upon by TCB and Customer in writing," would have indicated that the phrase was to modify the entire series.  *See id.* at

298; *see also* SCALIA & GARNER, *supra,* at 161.  However, section 1.1(3) of the RAA does not contain such a comma.  Thus, based on the absence of a comma, the modifying phrase "as are agreed upon by TCB and Customer in writing" appears to only apply to "other items in or adjacent to the Designated Areas," as suggested by the last-antecedent doctrine.  *See id.* at 298; *see also* SCALIA & GARNER, *supra,* at 161.

**Other Considerations**

Despite the foregoing, we must also be mindful that our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as expressed in the contract.  *See Seagull Energy E&P, Inc.,* 207 S.W.3d at 345.  We are to construe contracts from a utilitarian standpoint bearing in mind the particular business activity to be served.  *FPL Energy, LLC,* 426 S.W.3d at 63.  Moreover, when parties to an agreement raise competing interpretations, we only give effect to reasonable interpretations of the contract's terms, rejecting any interpretation that produces an objectively unreasonable or absurd result.  *See In re Horizon,* 470 S.W.3d 452, 465 (Tex. 2015) ("We will not construe the absence of a comma to produce an unreasonable construction."); *Reilly v. Rangers Mgt., Inc.,* 727 S.W.2d 527, 530 (Tex. 1987) (stating that courts should avoid, when possible, a construction that is unreasonable, oppressive, or inequitable); *Pavecon, Inc., R-Com, Inc.,* 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (noting that when interpreting a contract, one should avoid, if possible, construction that is unreasonable, oppressive, inequitable, or absurd).

The record demonstrates that the parties strongly disagree about the intent of section 1.1(3) of the RAA and its application. Given the disagreement about the intent behind and application of section 1.1(3) of the RAA, and the multiple, reasonable interpretations of section 1.1(3) of the RAA outlined above, we conclude that section 1.1(3) of the RAA is ambiguous and cannot be construed as a matter of law. *See In re Horizon*, 470 S.W.3d at 465; *J.M. Davidson, Inc.*, 128 S.W.3d at 229-31; *Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983) (noting that a contract is ambiguous when its meaning is uncertain and doubtful, or it is reasonably susceptible to more than one meaning); *see also Acadian Geophysical Servs. v. Cameron*, 119 S.W.3d 290, 302 (Tex. App.—Waco 2003, no pet.) ("When an agreement is ambiguous, the question should be submitted to the jury, whether or not the parties have pleaded ambiguity." (citing *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 444-45 (Tex. 1993))). We further conclude that the trial court erred by granting partial summary judgment based on an interpretation of section 1.1(3) of the RAA because a fact issue exists as to the parties' intent. *See* TEX. R. CIV. P. 166a(c); *W. Invs., Inc.*, 162 S.W.3d at 550. We sustain TCB's first and sixth issues.

**The Jury Charge**

In its fifth issue, TCB contends that the trial court erred by submitting an erroneous instruction in the charge based on its interpretation of section 1.1(3) of the RAA.[2] We agree.

A trial court must give "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. An instruction is proper if it assists the jury, accurately states the law, and is supported by the pleadings and the evidence. *See Tex. Worker's Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000); *see also* TEX. R. CIV. P. 278. Determining what jury instructions are necessary and proper is a matter within the trial court's discretion, and our review is to determine if there has been an abuse of that discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam). A judgment will not be reversed for charge error unless the error was harmful because it probably caused the rendition of an improper verdict or probably prevented the petitioner from properly presenting the case to the appellate courts. *Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 777 (Tex. App.—Texarkana 2015, pet. dism'd). Generally, if a charge error relates to a contested, critical issue, it is considered harmful. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). The error is harmless "'when the findings of the jury in answer to other issues are sufficient to support the

---

[2] The record reflects that TCB objected to this instruction as an improper statement of the law and an improper statement regarding the RAA.

judgment.'" *Shupe*, 192 S.W.3d at 579 (quoting *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980)); *see City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) ("[A] jury question may be immaterial, and therefore its submission harmless, when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict." (internal quotation marks & citation omitted)).

Ordinarily, if the trial court resolves a dispute over the construction of a provision of a contract according to the rules of construction, it should include that interpretation when submitting the question on failure to comply or perform the contract. *Petrohawk Props., L.P.*, 455 S.W.3d at 773 (citing STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC 101.7 (2012)). Here, the trial court instructed the jury in the charge regarding its interpretation of section 1.1(3) of the RAA, as stated in its order granting USP's motion for partial summary judgment. However, we have concluded that the trial court erred by granting USP's motion for partial summary judgment because section 1.1(3) of the RAA is ambiguous; thus, a material fact issue exists that precluded the trial court from providing this instruction in the charge. *See* TEX. R. CIV. P. 279; *Shupe*, 192 S.W.3d at 579; *Mandlbauer*, 34 S.W.3d at 912. As such, we conclude that the trial court abused its discretion by including an instruction on its interpretation of section 1.1(3) of the RAA in the charge. *See Shupe*, 192 S.W.3d at 579.

The question remains whether this charge error was harmful. We conclude that it was. Here, the jury was asked whether TCB failed to comply with the RAA and whether

TCB's failure to comply with the RAA was material.  The jury answered both questions in the affirmative.  The jury was also asked if USP failed to comply with the RAA, and the jury answered this question in the negative.  The jury then answered in the negative questions whether TCB and USP failed to comply with the TA and proceeded to answer the damages questions in the charge.  A review of the pleadings shows that the parties' arguments for liability under the RAA centered on an interpretation of section 1.1(3) of the RAA.  In other words, the interpretation of section 1.1(3) of the RAA was a contested, critical issue in this case.  And the jury's liability findings regarding the RAA likely were influenced significantly by the trial court's instruction regarding its interpretation of section 1.1(3) of the RAA.  Therefore, based on the foregoing, we conclude that the charge error in this case was harmful and requires a remand for a new trial.  Accordingly, we sustain TCB's fifth issue.

## Conclusion

Having sustained TCB's first, fifth, and sixth issues, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.[3]

---

[3] We recognize that TCB has also alleged errors in its second, third, and fourth issues regarding the trial court's denial of TCB's judgment notwithstanding the verdict regarding USP's breach-of-contract claims and various jury findings regarding which party breached the RAA and TA.  Each of these issues bears some relationship to how section 1.1(3) of the RAA should be interpreted.  In other words, an interpretation of section 1.1(3) by the factfinder after a trial will likely determine which party breached the RAA and TA.  Thus, we cannot say that the trial court's instruction regarding its interpretation of section 1.1(3) of the RAA was immaterial and its submission harmless.  And because we have concluded that section 1.1(3) of the RAA is ambiguous, a remand is necessary for further proceedings.  *See* TEX. R. APP. P. 43.3 (stating that when reversing a trial court's judgment, the court of appeals must render the judgment the trial court should have rendered, except when a remand is necessary for further proceedings, or the

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Smith,
     and Visiting Justice Davis[4]
Reversed and remanded
Opinion delivered and filed July 27, 2022
[CV06]



---

interests of justice require a remand for another trial). As such, we need not address TCB's second, third, and fourth issues. *See id.* at R. 47.1, 47.4.

    [4] The Honorable Rex Davis, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.